## Daniel L. Pickard *vs.* Edwin W. Collins.

Where a plaintiff is examined as a witness for the defendant, his testimony, given on the trial of a former action, between himself and another person, which is directly contrary to what he testifies to in the second suit, may be given in evidence, as an admission.

The defendant has a right to prove the former testimony, as an admission, by any competent witness, other than the plaintiff. He may also prove it by the plaintiff himself, unless the latter objects on the ground that he is privileged from answering.

A plaintiff is not bound to answer as to what he testified on a former trial; inasmuch as he might thus aid a prosecution against him for perjury. But the right to object is personal to him, as a witness.

A defendant is not precluded from examining the plaintiff, or any other person, on that point, because his testimony might impeach the plaintiff as a witness. He has no right to use it for the latter purpose. Having called the plaintiff to testify, he thereby represents him as deserving of credit, and is precluded from denying it by introducing evidence for the purpose of impeaching him, showing either that his general character for truth is bad, or that he has made previous contradictory statements. But he may, by any pertinent evidence, prove a fact to be otherwise than as testified to by the plaintiff.

A party is always at liberty to show what the material facts of a case are, although in so doing he may contradict the testimony of some of his own witnesses, and the evidence may thus tend, indirectly, to discredit them. And these facts may be shown by the admissions of the opposite party, as well as by other evidence.

The general rule, that the owner of land may use it according to his pleasure, is subject to this qualification, that he is not at liberty to use it in such a manner as to infringe the rights of others.

The maxim, so use your own that you injure not another's property, is supported by the soundest wisdom. But the injury intended is a legal injury; an invasion of some legal right, as erecting a building, or carrying on a business on one's own land, which so obstructs the enjoyment by another, of his property, as to amount to a nuisance; or removing the soil, or placing something on the soil of another.

These are violations of absolute legal rights, and are strict legal injuries. But darkening another's windows, or depriving him of a prospect, by building on one's own land, where no right to the light unobstructed has been acquired by grant or prescription, digging by a person on his own soil, so as to endanger the foundation of the building of the adjoining owner, and numerous similar acts by an owner of land, impairing the enjoyment and value of the land of another, short of what the law deems a nuisance, invade no legal right, and hence are not legal injuries.

In an action to recover damages of the defendant, for erecting a high fence upon his premises immediately adjoining the plaintiff's dwelling house, and before

Pickard *v.* Collins.

his windows and doors, it is erroneous to charge the jury that the defendant had not a right to build a fence on his own land, for the purpose of excluding the light from the plaintiff's dwelling, and that if he has done so, and it has had that effect, he is responsible in damages for the injury.

The liability of the defendant, in such a case ought not to be made to depend upon the *motives* with which the erection was made.

Bad motives, in doing an act which violates no legal right of another, cannot make the act a ground of action.

In an action to recover damages for a nuisance caused by the erection of a barn or stable upon the defendant's land adjoining the plaintiff's dwelling house, and allowing manure and filthy water to accumulate and stand in the cellar thereof, it is not erroneous for the judge to charge the jury that if the defendant constructed and adapted the barn so that, in its ordinary use it would be injurious and offensive to the plaintiff, and cast unwholesome odors into his house, the defendant is liable for the nuisance thus caused by his tenants, to whom he had let the barn.

Where a barn is built to be used in a certain way, and its use in that way would necessarily, under ordinary circumstances, be a nuisance, if it is let to a tenant who in fact uses it in that way, and such use proves noxious or injurious to adjoining occupants, the owner is liable for the injury.

But if the use of the barn in that way proves a nuisance, by reason of water in the cellar, and that is a special unusual circumstance, the owner is not liable for the nuisance, unless he knew, or had reason to believe, when he let the barn, that the use of it in the ordinary mode would prove a nuisance.

APPEAL by the defendant from a judgment entered at a special term, after a trial at the circuit.

The complaint contained five counts. The first count charged that the defendant, in 1849, caused to be erected on his premises and along or near the north and east boundary lines of the plaintiff's premises in the city of Rochester a high board fence, from eight to ten feet in height, and covered the same with gas tar, thereby causing offensive odors to enter the plaintiff's dwelling house, and creating a nuisance therein. The second count charged that the defendant, in 1850, caused to be erected on his premises, along or near the north boundary line of the plaintiff's premises, and contiguous to said dwelling, a long shed of boards, the roof of which was covered with gas tar, and caused to be placed about said shed a large quantity of combustible matter, and kept a fire burning several days near thereto, causing an offensive stench to enter said dwelling and exposing it to danger

from fire. The third count charged that the defendant, in 1850, caused to be erected on his premises, and contiguous to the premises of the plaintiff, a brick stable, and caused to be dug under the same a cellar without a drain, and suffered a large quantity of manure and filthy water to accumulate and stand therein, thereby causing noisome stenches and vapors to come upon said premises of the plaintiff, creating thereon a nuisance. The fourth count alleged that the defendant, in 1852, opened and exposed a privy vault on his premises, near said premises of the plaintiff, and dug a cellar about the same, into which the contents of said vault oozed out, and permitted the same for a long time to remain thus exposed, whereby noxious smells ascended into said dwelling, creating therein a nuisance. In the fifth count the plaintiff complained that the defendant, in 1852, procured said shed to be used as a hen house and horse barn, and allowed the manure and offal therefrom to accumulate under the windows of plaintiff's dwelling, whereby noxious odors ascended into the plaintiff's said dwelling, creating therein a nuisance. The answer denied the complaint.

The action was tried at a circuit court held in Monroe county in February, 1856, before Hon. E. DARWIN SMITH, justice. On the trial the plaintiff gave evidence proving that during the time of the alleged causes of action, the defendant occupied or controlled, built upon and let to use, premises on the corner of Elm and Chesnut streets in the city of Rochester; that such premises consisted of a dwelling house on the corner of a lot running back towards the west; that said lot was one open lot joining the grounds to the dwelling house; that during the time of the said causes of action the plaintiff inhabited the premises adjoining on Elm street; that the plaintiff's premises consisted of a dwelling house in which he lived with his family; that said house was bounded and surrounded on the north and east by said grounds of the defendant; that there was ample room in the back part of the defendant's grounds to build the barn and shed without putting them against the plaintiff's house, and that all of the grounds of the plaintiff consisted of a small front door

Pickard v. Collins.

yard on the south of his house; that on the west his house abutted on Cedar street and had three or four windows on the north and one on the east; and proving the building of the fence mentioned in the first count of the complaint, and the painting of the same with gas tar; that the same was so painted or covered with gas tar, by the defendant, in 1849, after the premises were purchased by the plaintiff, but before he occupied them, and remained up about a year, and was repeatedly during that time painted with gas tar; and that the said gas tar gave off offensive and sickening odors—offensive and sickening to the plaintiff and his family. The plaintiff also gave evidence proving that the defendant, about the month of January, 1850, erected the shed mentioned in the second count of the complaint, a portion of which he also painted with gas tar, which was in the like manner offensive to the plaintiff's family; that said shed was built on the north of the plaintiff's house, on the grounds of which the defendant had the care and letting, and that the inside wall of the shed was a part of the said fence, and that said shed was opposite some of the windows of the plaintiff's house; also, that a fire was one night seen blazing in the defendant's yard about ten feet from the shed; that the defendant was waked in the night and notified of it, and got up and helped put it out. But no proof was given as to who built or started such fire. The plaintiff further gave evidence proving that in the spring of the year 1850, the defendant let his dwelling house next east of the plaintiff's premises to Ogilvie L. Sheldon, and in the month of September following let to him the premises north thereof, and north of the plaintiff's premises, having previously agreed with Sheldon to erect thereon a brick horse barn for said Sheldon's use: that he so erected the same during the summer of the year 1850, locating the same on the north of the plaintiff's premises, and only about a foot and a half therefrom, building it with a cellar about seven feet deep, of which about four were below the surface of the earth, without a drain, although it was perfectly practicable to have made a drain—building it with a trap door in the floor, down which manure might be thrown, with windows and a door in the cellar on the north and

west sides thereof, and with a double door on the west end, on the first floor, for admitting a carriage, and a door and windows on the north side thereof, and that on so building he let the same together with said shed which was west thereof, and the surrounding grounds to Sheldon. That Sheldon took possession of said stable and horse barn and of said shed and grounds connected therewith, on the first day of September, 1850, in pursuance of the terms of said lease, and continued in possession and use thereof till the expiration of such lease; that said Sheldon was in the habit of throwing a part of the manure from his horse into the cellar, and a part of it out of the north door of the barn; that water stood in the cellar and the manure saturated with the water created offensive odors, which affected the atmosphere of the plaintiff's dwelling, and rendered the same noxious and uncomfortable to the plaintiff and his family; and that Dr. Dodge and Dr. Collins, the subsequent tenants, who in like manner hired the premises, continued to use them in the same way and with the same effect. As to the state and condition of the premises at the time Dodge and Collins took them of the defendant, Thomas B. Collins testified that his impression was, that when he and Dodge went into the barn, there was no manure there; and when they went away, a large pile had gathered there. No other testimony was given on that point. Sheldon stated that while he occupied such barn, he informed the defendant that the barn and manure were very offensive to the plaintiff's family, and desired the defendant to drain the cellar or to fill it up; but he did not do either, and said that he did not care for Pickard's family, and refused to make a drain or fill up the cellar. The plaintiff further gave evidence that the tenants of the said shed had used it for a joiner's shop and lumber room, and as a henery, and that a great stench therefrom filled the plaintiff's house and rendered it unfit for habitation; and that for a while in the summer of 1853, and before the commencement of this action, a tenant had used it as a stable and had kept his horse there, at which time the manure had been piled up under the plaintiff's windows, and that on opening the windows to the plaintiff's house, a horrid odor from the manure of the

Pickard *v.* Collins.

hens and horse came into the dwelling and rendered the atmosphere of the plaintiff's dwelling highly offensive and noxious. As to the occupancy of the shed at that time, Robert R. Harris testified that he knew, by sight, the tenant that occupied the shed for a stable; that he did not know who had used it for other purposes; that he did not know that Mr. Collins, the defendant, had a horse at that time; that he as city superintendent, by direction of the board of health, proceeded to abate the nuisance, but instead of removing the offensive matter and leaving the shed standing, he tore down the shed and left the offensive matter unremoved; that before tearing it down he had examined the shed and requested the defendant to remove it, who treated the subject indifferently, and replied that it was not a nuisance, and refused to remove it; and that the superintendent then requested him to go with him and examine it, but the defendant refused to do so; that when the superintendent proceeded to pull it down, the defendant, with his attorney, came to the spot to forbid pulling down the shed, but it was already down. It further appeared that defendant had never directed nor advised the tenant how to use the premises, nor where to put the manure. The plaintiff proved that while Sheldon occupied the horse barn, the defendant put gas tar upon the roof from time to time—as many as three or four coats—thereby creating an offensive odor, nauseous to Sheldon's own family as well as to the plaintiff's family; that it took each coat some three or four days to dry, and that until dry, it smelled badly; that in drying the odor passed off. The plaintiff also gave evidence, proving that in the summer of 1852, the defendant put up a brick building on the east side of the plaintiff's dwelling for a joiner's shop, and on the spot was an old privy vault; that in digging and excavating for the foundation of such building, the earth was removed from around the privy vault and the contents oozed out into the defendant's cellar, producing an insufferable stench, which continued some two or three weeks before the same was removed by the defendant. As to the defendant's fence, the plaintiff gave evidence proving that the same rendered the plain-

tiff's habitation very dark, cutting off the light and leaving it too dark to inhabit.

The defendant's counsel proved the title of the premises adjoining the plaintiff on the north and east to be in Oliver Collins, by deed dated prior to 1849, and then read in evidence the lease above mentioned. He then offered in evidence a judgment roll of a judgment in favor of Oliver Collins, plaintiff, against said Pickard, defendant, docketed Nov. 2, 1853. That suit was for a trespass, alleged to have been committed by Pickard on the lands of Oliver Collins, which trespass was said to have consisted in sawing off and carrying away portions of a fence, throwing snow off from his house on to a shed, injuring shrubbery, throwing slops, and tipping over a barrel of gas tar and spreading it around, and on a fence of Oliver Collins. The plaintiff in that suit recovered a judgment against the defendant therein, for $37.50 damages, and $58.03 costs.

This proof was objected to on the ground that, 1. It was inadmissible under the pleadings. 2. That it was entirely immaterial what trespasses Pickard had committed against Oliver Collins or his premises. 3. On the ground that the judgment roll was not filed until November, 1853, while this action was commenced June 28th, 1853. 4. That the judgment was not *inter partes,* nor between privies, and was not admissible in favor of the defendant. This objection was sustained, and the defendant's counsel excepted.

*Lysander Farrar* called and sworn for the defendant, testified: "I am an attorney and counsellor of this court; some years ago I defended Edwin W. Collins on the trial of an indictment for a nuisance in connection with the premises now in suit; Daniel L. Pickard was examined as a witness for the people, and gave evidence; I cannot recollect what he testified; I kept the minutes of said trial. (The minutes were here produced.) These are my minutes; I took them at the trial; I endeavored to take them correctly; I believe that I did take them correctly; on reading them they do not refresh my memory as to what Pickard testified to; endeavored to take the minutes correctly, but I cannot now say whether they are

Pickard v. Collins.

correct, nor can I say whether they contain all the testimony that Pickard gave at the time." The defendant's counsel now proposed that the witness read from his minutes what .Pickard testified to at that trial. To this the plaintiff's counsel objected, on the ground that witness could not say that the minutes were correct, and could not say that they contained all the testimony given by Pickard. Objection sustained and defendant's counsel excepted. *Daniel L. Pickard* called and sworn for the defendant, testified : "I am plaintiff in this action ; I occupy the premises ; I began to occupy them in the neighborhood of 1848 or 1849 ; I left them two years ago last summer, as near as I can recollect ; I was a witness on a trial of an indictment against Collins for a nuisance ; I testified on that occasion about this gas tar ; the fence was built after I bought the premises, but before I moved in ; I can't tell how long before I moved in the fence was built ; when I moved in the fence was there and freshly built ; the fence was painted with gas tar before I went in, and repeatedly after ; portions of the fence have been painted after I went in there ; it continued to be painted over in parts as long as I lived there." Question by the defendant's counsel : "Did you or did you not state, upon the trial of the indictment, that no gas tar had been put on the fence after you moved in there ?" Question objected to, on the ground that the defendant had made the plaintiff his witness and could not impeach him ; and also that he should ask him as to the fact, and not to what he had before said ; and also that the question was immaterial. The defendant's counsel claimed that he was entitled to the answer, as an admission of a party to the suit. Objection sustained and question overruled, to which the defendant's counsel excepted. Question by the defendant's counsel : " Did you on that occasion testify that it was yourself that upset the barrel of gas tar, and spilled it on the ground ?" Objected to on the grounds stated in objection to last question. Objection sustained, and exception. " I did upset the barrel of gas tar ; I bought a jug of gas tar from the gas works ; I delivered it to the gentleman who sent for it, Mr. Adams ; I afterwards saw the jug ; after I took it from the

gas works, I saw the jug in Mr. Adams' barn; about the time Mr. Adams left Rochester." Question by the defendant's counsel: "Did you on the former trial state that you could not tell what you did with the contents of the jug without criminating yourself?" Objected to on the grounds as above. Objection sustained and exception taken by the defendant's counsel. On the case thus made, the defendant's counsel asked the plaintiff's counsel if they claimed to recover on all the counts of the complaint, to which the reply was in the affirmative. Thereupon the defendant's counsel moved for a nonsuit, on the third count or cause of action set up in the complaint, and objected to the plaintiff's recovering therefor, on the ground that the defendant only built the barn and let the premises to tenants, and it was by the way and manner in which the tenants used the barn or stable that the nuisance, if any, was produced, and not by any thing done or suffered by the defendant. This motion and objection were overruled by the court, and to that decision the defendant's counsel excepted. The defendant then moved for a nonsuit, and objected to the plaintiff's recovering on the fifth count or cause of action stated in the complaint, that is, for the shed being used as a horse stable and henery; on the ground that it did not appear that the defendant had ever so used it or authorized such use, and that he was not responsible for any use to which it was put by tenants. This motion and objection were overruled by the court, and to such decision the defendant's counsel excepted. The defendant's counsel then objected to the plaintiff's recovery in respect to the fire kindled in the yard, on the ground that it did not appear that the defendant kindled it; and insisted that the court should not submit that matter to the jury, but such objection and request were overruled by the court, and to his decision the defendant's counsel excepted. The defendant's counsel claimed that in respect to the brick horse barn or stable, the defendant had absolutely a legal right to build and let it, and hence the plaintiff could not call in question the defendant's motives in so doing, and make them a cause of action. The defendant's counsel claimed the same in respect to the

Pickard *v.* Collins.

building and letting the shed and other premises; but that if the defendant's motives in building and letting either the barn or shed could give the plaintiff a right of action like this, still there was no sufficient proof for the jury of any motive or design in the defendant to wrong or injure the plaintiff in so doing. But the court overruled these objections, and decided that the case must go to the jury on all the causes of action stated in the complaint, and to that decision the defendant's counsel excepted. The judge charged the jury, among other things, in substance as follows: "The case involves purely a question of fact. The action is for nuisance, and the complaint contains five counts. The first count, or cause of action, is for erecting a high board fence close to the plaintiff's windows, and covering it with gas tar, thereby darkening the plaintiff's rooms, and conveying into them noxious and sickening odors. The second relates to the shed and henery. The third to the barn. The fourth to the privy vault. And the fifth to the fire in the defendant's yard. If either of these is a nuisance, the plaintiff is entitled to recover. A nuisance is something noxious or offensive to any of the senses, either to the sense of sight or hearing, as well as of smelling; and that may be a nuisance which offends none of the senses, if it be deleterious to the health or safety, or noxious to human enjoyment. What is a nuisance is a question of fact. The first proposition of law which I submit to you is that every man hath such a title to his own land that he may use it for all purposes to which such land is usually applied, without being answerable for the consequences, direct or indirect, to others. For instance, the defendant in this action had a perfect right to build a fence on this lot in the usual and customary way, for the ordinary and legitimate enjoyment of his premises. But he had not a right to build a fence in an unusual manner, materially to annoy and injure his neighbor, and deprive him of the use and enjoyment of his lot; for a man is bound so to use his own as to do no needless injury to his neighbor. As an illustration of the principle of law which I have stated, I will give you the following: While as a general rule a person may use his property as he wishes to, it has been de-

cided that a man cannot, on a city lot, dig down to an unusual and great depth for purposes extraordinary to the common use of such land, whereby the land of his adjoining neighbor is undermined and falls in, and that he is liable for the damages if he do so. To this proposition the defendant's counsel excepted. So a man may dig in his own grounds in the usual way, and of any ordinary depth, but a man has no right to dig down a pit or trench of unusual depth adjoining the house or building of his neighbor, and if he do so, and his neighbor's wall or earth thereby fall into it, he is liable for the damage. The question is whether the construction of this fence and the putting on of gas tar, were within any of the purposes for which such land is ordinarily used. If it was it was lawful, whoever may be injured. But if you find that the defendant put this fence there, or covered it with gas tar, as stated by the witness, for the purpose of injuring or annoying the plaintiff, and rendering the use and enjoyment of his premises uncomfortable or unhealthy, and it had that effect, that would be an unreasonable use of his property, and he must be responsible for any damages or injury done thereby. The defendant had a right to build and use a barn on the lands occupied by him, and to let it to be used to tenants, and he is not responsible for the acts of the tenants unless procured or instigated by him. But if you shall find that this barn was noxious and injurious, and a nuisance, in fact, to the plaintiff, and that the defendant located it where it was, and constructed and adapted it so that in its ordinary use it would be injurious and offensive to the plaintiff, and cast unwholesome odors into his house, then the defendant is liable for the nuisance thus caused, and the plaintiff is entitled to recover in respect to such nuisance. If the barn was built to be used in a certain way, and was let to a tenant who in fact used it in that way, and such use proved injurious or noxious to the plaintiff, the defendant is responsible for such injury. The same is true of the shed which I have stated respecting the barn. As to the privy vault, the defendant had a perfect right to remove it, with a view to improve his premises or otherwise. The removal of it must necessarily occasion more

Pickard *v.* Collins.

or less annoyance. If it was removed so as to occasion no more offense than was necessary, the defendant is not liable; but if in the time or manner of doing it he was remiss or negligent, or if he allowed it to infect the surrounding atmosphere an unreasonable length of time, it would be a nuisance during such needless excess of time, for which he is responsible. There is no evidence that the defendant kindled or procured the fire to be kindled; and even had he been the author of it with an intent to injure the plaintiff, an action against him for malicious mischief would have been more proper than this action for nuisance. I am of opinion that the fire was not a nuisance, and that the plaintiff is not entitled to recover in respect to this cause of action. If you shall find that the henery was erected and used, or procured to be used, by the defendant, in an unusual and extraordinary manner, and so as to injure or annoy the plaintiff, and that the defendant used it, or procured it to be used, with a design to injure and annoy the plaintiff, and that it actually was injurious and annoying to the plaintiff, that would make it a nuisance while it so remained, and the plaintiff is entitled to your verdict in respect to such nuisance. If you find for the plaintiff, you are to give him, 1st. Damages equal to his pecuniary loss, and a just recompense for his discomfort and annoyance from these nuisances. 2d. The case is one for exemplary damages; if you find that the alleged nuisances were put there maliciously, and with intent to injure and annoy the plaintiff, in that case you are entitled to give damages by way of smart money. You may give such damages as you shall think proper under the circumstances of the case, and such as shall be calculated to deter others from committing like offenses. In this respect you are not limited by any precise rules of law. It is a question within your discretion." The defendant's counsel excepted to each and every part of the above charge. The jury found a verdict for the plaintiff for $1250.

*J. N. Pomeroy,* for the plaintiff.

*E. A. Hopkins,* for the defendant.

*By the Court,* T. R. STRONG, J. The testimony of the plaintiff, on the trial of another case, which was proposed to be proved, to the effect that no gas tar had been put on the fence after he moved on the premises occupied by him, which is directly contrary to his testimony on the trial of this case, regarded as an admission, was relevant evidence in this case on the issue joined upon the first cause of action; and the defendant clearly had a right to prove that testimony as an admission, by any competent witness other than the plaintiff. I do not perceive why proof of the admission might not be made by the plaintiff himself, unless the plaintiff objected on the ground that he was privileged from answering. He was not bound to answer as to what he testified on a former trial, as he might thus aid a prosecution against him for perjury. (*Bellinger* v. *The People*, 8 *Wend*. 595. *Mitchell* v. *Hinman*, *Id*. 667.) But the right to object was personal to him as a witness. (*The People* v. *Bodine*, 1 *Denio*, 281. *Ward* v. *The People*, 6 *Hill*, 144.) No objection was made by the plaintiff personally, and the objection by his counsel in his behalf as a party, was not put on the ground of privilege, but on the grounds that the defendant had made the plaintiff his witness, and could not impeach him; that the plaintiff should be asked as to the fact, and not as to what he had before said; and also that the question was immaterial. The defendant was not precluded from examining the plaintiff or any other person, on the point, because his testimony, beyond the admission, and thus tending to prove the fact admitted, might impeach the plaintiff as a witness. He had no right to use it for the latter purpose; having called the plaintiff to testify, he thereby represented him as deserving of credit, and was concluded from denying it by introducing evidence for the purpose of impeaching him, showing either that his general character for truth was bad, or that he had made previous contradictory statements; but he might, by any pertinent evidence, prove a fact to be otherwise than as testified to by the plaintiff. A party is always at liberty to show what the material facts of a case are, although in so doing he may contradict the testimony of some of his own witnesses, and the evidence may thus tend

indirectly to discredit them. (*Thompson* v. *Blanchard,* 4 *Coms.* 303, 311.) And those facts may be shown by the admissions of the opposite party as well as by other evidence.

The principal questions in the case arise upon the instructions to the jury. It is alleged in the complaint as the first cause of action, that the defendant, contriving and wrongfully intending to annoy and injure the plaintiff in the use of his dwelling house, erected, or caused to be erected, on the defendant's premises, immediately adjoining the plaintiff's dwelling house, and before his windows and doors, a board fence of from eight to ten feet high, and covered it with gas tar, and permitted it to remain so, by means of which, offensive and unwholesome smells arose and came into and upon the premises of the plaintiff, and annoyed him, and rendered his said dwelling house unhealthy and unfit for habitation. Evidence was given by the plaintiff in support of this cause of action. The jury were charged, as to this part of the case, that the defendant " had not a right to build a fence in an unusual manner, materially to injure and annoy his neighbor, and deprive him of the use and enjoyment of his lot; for a man is bound so to use his own as to do no needless injury to his neighbor ;" and further, " if you find the defendant put this fence there, *or* covered it with gas tar, as stated by the witness, for the purpose of injuring or annoying the plaintiff and rendering the use and enjoyment of his premises uncomfortable or unhealthy, and it had that effect, that would be an unreasonable use of his property, and he must be responsible for any damages or injury done thereby." It is no part of the cause of action stated in the complaint, that the defendant erected or continued this fence, and thereby shut out the light from the dwelling of the plaintiff; the gist of the complaint, in respect to the fence, is covering the fence with gas tar, and the annoyance and discomfort from the offensive and unwholesome smells thereby occasioned; but evidence was given by the plaintiff, without objection, of the darkening of the house by means of this fence, and the jury were told in the charge, previous to the instructions above recited, that it formed part of the first cause of action. No specific objection, however, was taken to submitting the

subject to the jury, as clearly was done in the charge, as not embraced within the issue, and it is now too late to raise the objection for the first time. The question of the accuracy of the instructions in point of law, not their applicability to the complaint, is all that can be inquired into, and that is properly presented by the exception. The doctrine of the instructions, as applied to that part of the case which relates to the fence, and its effect upon the plaintiff is, that the defendant had not a right to build a fence on his own land for the purpose of excluding the light from the plaintiff's dwelling, and that if he has done so, and it had that effect, he is responsible in damages for the injury. It is a general rule that the owner of land may use it according to his pleasure. The rule is however subject to this qualification, that he is not at liberty to use it in such a manner as to infringe the rights of others. So use your own that you injure not another's property, is a maxim of law supported by the soundest wisdom. But the injury intended is a legal injury; an invasion of some legal right, as erecting a building, or carrying on a business, on one's own land, which so obstructs the enjoyment by another of his property as to amount to a nuisance; or removing the soil, or placing something on the soil of another. These are violations of absolute legal rights and are strict legal injuries. But darkening another's windows, or depriving him of a prospect, by building on one's own land, where no right to the light unobstructed has been acquired by grant or prescription, digging by a person on his own soil so as to endanger the foundation of the building of the adjoining owner, and numerous similar acts by an owner of land, impairing the enjoyment and value of the land of another, short of what the law deems a nuisance, invade no legal right, and hence are not legal injuries. The maxim referred to does not extend to condemn such acts, as has been held in numerous cases. (*Radcliff's Ex'rs* v. *Mayor of Brooklyn*, 4 *Comst.* 195, *and cases there cited. Hay* v. *The Cohoes Company*, 2 *id.* 159. *Farrand* v. *Marshall*, 21 *Barb.* 409. *Parker* v. *Foote*, 19 *Wend.* 318.) The instruction in question, if sustained, would carry the doctrine so far, and make the owner of land liable for such acts, if done with a bad

Pickard *v.* Collins.

motive. The question of liability would turn upon the motive. Although the owner might, for the protection of his land, and his own comfort and profit, or any worthy motive, erect a fence, or building, which would have the effect to shut out the light from his neighbor's dwelling, he could not do so for the purpose of injury. Such a principle would be highly dangerous to the security of the enjoyment of real property. As to various modes of enjoyment, the lawfulness or unlawfulness of them would depend on the views of others as to the intentions of the owner. The fallacy of this doctrine consists in its overlooking a fatal defect in the right of action in such a case—the absence of any legal injury. Bad motives in doing an act which violates no legal right of another, cannot make that act a ground of action. But it is not necessary to examine the doctrine further on principle; it is fully settled by authority. In *Mahan* v. *Brown*, (13 *Wend.* 261,) which was an action for the obstruction of lights in the dwelling house of the plaintiff, the facts proved were, that the house was built on a lot adjoining a lot of the defendant, in which windows were placed for the admission of light and air; that the defendant, under pretense of preventing his yard from being overlooked by the windows in the plaintiff's house, but in fact from mere malice, and with the intent to exclude the light and air from the windows in question, had erected on his own lot a fence forty feet high, opposite the recess or opening in the house of the plaintiff, in consequence whereof the light and air had been excluded from the windows and the plaintiff had sustained great damage, by her apartments, which had been occupied by boarders, being rendered untenantable. The plaintiff was nonsuited. On a motion to set aside the nonsuit, which was denied, Savage, Ch. J., delivered the opinion of the court, and in the course of the opinion says, "The person who makes a window in his house which overlooks the privacy of his neighbor, does an act which strictly he has no right to do, although it is said no action lies for it. He is therefore encroaching, although not strictly and legally trespassing upon the rights of another. He enjoys an easement therefore in his neighbor's property, which in time may ripen into a right. But before

sufficient time has elapsed to raise a presumption of a grant, he has no right, and can maintain no action for being deprived of that easement, let the motive of the deprivation be what it may; and the reason is, that in the eye of the law he is not injured. He is deprived of no right, but only prevented from acquiring a right, without consideration, in his neighbor's property." And again, "The defendant has not so used his own property as to injure another. No one, legally speaking, is injured or damnified, unless some right is infringed. The refusal or discontinuance of a favor gives no cause of action. The plaintiff in this case has only been refused the use of that which does not belong to her; and whether the motives of the defendant were good or bad, she had no legal cause of complaint."

The charge in respect to the barn, fairly interpreted, I think, relates solely to the manner in which the barn was used, and the effect of its use, which is the cause of action stated in the third count of the complaint; and the instruction that if the defendant constructed and adapted the barn so that in its ordinary use it would be injurious and offensive to the plaintiff, and cast unwholesome odors into his house, the defendant was liable for the nuisance thus caused by his tenants to whom he had let the barn, was, in my opinion, correct. The case of *Fish* v. *Dodge*, (4 *Denio*, 311,) is directly in point. It is there held that one who demises his property for the purpose of having it used in such a way as must prove offensive to others, may himself be treated as the author of the mischief. (*See also The King* v. *Pedly*, 1 *Adol. & Ellis*, 822; 28 *Eng. Com. Law R.* 220.) But the further instruction that if the barn was built to be used in a certain way, and was let to a tenant who in fact used it in that way, and such use proved noxious or injurious to the plaintiff, the defendant is responsible for the injury, I think required some modification. If the use in that way would necessarily, under ordinary circumstances, be a nuisance, the proposition is correct; but if it proved a nuisance by reason of water in the cellar, and that was a special unusual circumstance, the defendant was not liable for the nuisance, unless he knew, or had reason to believe, when he let the barn, that the use of it in the

ordinary mode would prove a nuisance. (*Fish* v. *Dodge, above cited.*)

For the error in the charge relating to the fence, mainly, I am of opinion that the judgment should be reversed, and a new trial granted, with costs to abide the event.

Judgment accordingly.

[MONROE GENERAL TERM, December 1, 1856. *T. R. Strong, Welles* and *Smith*, Justices.]