ALBANY, Jan. 1835.

Mahan v. Brown.

---

## MAHAN *vs.* BROWN.

An *action on the case* does not lie against a person for erecting a fence on his own land, whereby he *obstructs the lights* of his neighbor, let the motive of the obstruction be what it may, if the lights be not *ancient lights*, or his neighbor has not acquired a right by *grant* or *occupation and acquiescence.*

Nor does an action lie for opening a window overlooking the privacy of another ; and on the contrary, although the doing so be an encroachment, the continuance thereof for 20 years will ripen into a right, which it seems can be prevented only by building opposite to the offensive window.

THIS was an *action on the case*, tried at the Albany circuit in September 1233, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The suit was brought for the *obstruction of lights* in the dwelling house of the plaintiff. The plaintiff alleged in her declaration, that *before* and *at the time* of the committing of the

grievances complained of, she has been and still was *lawfully possessed* of a certain dwelling house, with the appurtenances, situate in the third ward of the city of Albany, bounded on the south by a lot owned or occupied by the defendant, &c.; in which dwelling house there were 15 windows *through which the light and air entered, and still of right ought to enter into the dwelling house,* for the convenient and wholesome use and enjoyment thereof; yet the defendant, wrongfully and unjustly intending to injure the plaintiff, and to deprive her of the use and enjoyment of the windows, and to annoy and incommode her in the occupation of her dwelling house, and to obstruct her in the business of a keeper of a boarding house, and to deprive her of the profits and gains arising therefrom, on, &c. at, &c. wrongfully, wantonly and maliciously erected near to and in front of such windows a *fence* of the height of 50 feet, and wantonly and maliciously, without benefit or advantage to himself and for the sole purpose of annoying her, kept and continued the fence for a long space of time, &c. by means whereof the house is greatly darkened, and the light and air obstructed from entering the same through the windows, and the house rendered unhabitable, so that her boarders have left her, and her appartments are untenanted, &c. The defendant pleaded the *general issue.*

On the trial of the cause, the counsel for the plaintiff, in his opening to the jury, stated that the dwelling house of the plaintiff was built on a lot adjoining the lot of the defendant; that a recess was cut into the side of the house adjoining the lot of the defendant, in which windows were placed for the admission of light and air; that the defendant, under the pretence of preventing his yard from being overlooked by the windows in the plaintiff's house, but in fact from *mere malice and with the intent to exclude the light and air from the windows* in question, had erected on his own lot a fence forty feet high, opposite the recess or opening in the house of the plaintiff, in consequence whereof the light and air had been excluded from the windows, and the plaintiff had sustained great damage, by her apartments which had been occupied by boarders being rendered untenantable. The counsel admitted that the *upper* windows in the house of the plaintiff did

overlook the yard of the defendant, but that a fence had been erected by the plaintiff 20 feet high, to prevent the defendant's yard being overlooked from the *lower* windows. He also admitted that the plaintiff did not claim that the windows were *ancient lights*, or that a right had been acquired by her, by *grant* or *occupation and acquiescence*. On this opening, the counsel for the defendant moved that the plaintiff be *nonsuited*, inasmuch as it was not proposed to prove that she had a right or title to the privleges complained to have been destroyed ; which motion was granted by the judge, and the plaintiff was accordingly nonsuited. A motion was now made that the nonsuit be set aside, and a new trial granted.

*S. Stevens*, for the plaintiff.

*A. Taber*, for the defendant.

*By the court*, Savage, Ch. J. That an action upon the case lies for stopping the *ancient lights* of another is too well settled to require discussion or authority to support it. Formerly, indeed, it was holden that the lights must be ancient and beyond the memory of man. And in the case of *Bury* v. *Pope, Cro. Eliz.* 118, it was agreed by all the justices that where two own adjacent lands, and one builds and makes windows looking on the lands of the other, and continues for 30 or 40 years, yet the other may lawfully erect on his own soil an house or other thing against said lights, without being liable to an action ; for it was the folly of the first to build his house so near the other's land. And the maxim is quoted, *cujus est solum, ejus est summitas usque ad cœlum.* Now, however, it is perfectly settled, that as the occupant may acquire a right to the house itself by 20 years uninterrupted possession under claim of title, so in the same time he shall by occupation acquire a right to an easement belonging to the house. *Yelv.* 216. 2 *Saund.* 175, *a. b. c.* It is true that 20 years possession does not strictly confer a right absolutely, but it raises a presumption of a grant. 2 *Barn. & Cress.* 686. The person who thus opens a window overlooking the privacy of his neighbor, enjoys an easement in that which does not belong

to him. Yet no action lies for this encroachment upon the rights of the person whose lands are thus overlooked ; the encroachment will in 20 years ripen into a right, and it is said that the only remedy is to build on the adjoining land opposite to the offensive window.   3 *Campb.* 80.

The present is not a case of ancient lights.   It is not contended that the action can be sustained upon that ground, but upon the principle that no one shall so use his own property as to injure another.   Thus, no man has a right to erect upon his own land, near the house of another, any manufactory which shall poison the air, and render it unwholesome. So in *Morley* v. *Pragnell, Cro. Car.* 510, an action was held to lie by an innkeeper against the defendant for erecting a tallow furnace, which annoyed his house with stenches, by reason of which his guests left him, and his family became unhealthful.   So in *Aldreds' case,* 9 *Co.* 48, the plaintiff brought an action against Burton, the defendant, for erecting a hoghouse and putting his hogs therein ; and by reason of the fetid smells the plaintiff and his family could not remain in his house.   The plaintiff recovered.   The defendant moved in arrest of judgment, that one ought not to have so delicate a nose that he cannot bear the smell of hogs, for they are necessary to the food of man ; but it was resolved that the action lay.   In these cases, however, it is to be observed that a positive right was invaded.   Every person is entitled to the use of the elements in their natural purity, and whoever poisons them or renders them unhealthy, violates that right   The person who makes a window in his house which overlooks the privacy of his neighbor, does an act which strictly he has no right to do ; although it is said no action lies for it.   He is therefore encroaching, though not strictly and legally trespassing upon the rights of another.   He enjoys an easement therefore in his neighbor's property, which in time may ripen into a right.   But before sufficient time has elapsed to raise a presumption of a grant, he has no right, and can maintain no action for being deprived of that easement, let the motive of the deprivation be what it may ; and the reason is, that in the eye of the law he is not injured.   He is deprived of no right, but only prevented from acquiring a right, without con-

sideration, in his neighbor's property. Suppose an obliging farmer permits his neighbor to pass and repass through his fields, to go to the lands of that neighbor; if this is permitted for 20 years, it becomes an easement, a right of way, which the owner of the soil cannot infringe; but at the end of ten years, he chooses, from mere malice or wantonness, to shut up this passage, and refuses permission to his neighbor to pass over his lands, as he used to do for ten years past; does an action lie? Most certainly not. And yet that case is not distinguishable, in principle, from that under consideration. The defendant has not so used his own property as to injure another. No one, legally speaking, is injured or damnified, unless some right is infringed. The refusal or discontinuance of a favor gives no cause of action. The plaintiff in this case has only been refused the use of that which did not belong to her; and whether the motives of the defendant were good or bad, she has no legal cause of complaint.

The motion to set aside the nonsuit denied.