## THE SOUTH ROYALTON BANK v. THE SUFFOLK BANK.

### Action.

An act lawful and right in and of itself is not actionable on account of its being performed from an improper or bad motive.

The plaintiffs, a banking corporation, declared that the defendants maliciously, corruptly and wickedly intending to injure, break down and destroy the plaintiffs, and bring their bills into discredit and prevent their circulation, had bought up, taken and kept out of circulation a large amount of their bills and notes, and refused to exchange them for other funds, but demanded and compelled the plaintiffs to pay the specie upon them, whereby the plaintiffs were injured, and deprived of great profits, &c. *Held*, on demurerr to the declaration, that it did not disclose any legal cause of action.

An action for a vexatious suit cannot be sustained upon proof of malice alone; a want of probable cause must also be shown. BENNETT, J.

ACTION ON THE CASE. The plaintiffs described themselves as "an association formed and established for the purpose of banking under, and by virtue of a statute law of the state of Vermont, passed November 17, 1851, entitled 'an act to authorize the business of banking,' and transacting their business at Royalton, in the county of Windsor," and declared against the defendants as follows: "in a plea of the case, for that whereas the plaintiffs,—the association aforesaid,—having first deposited with the treasurer of the state of Vermont the funds and securities as required by said law, and in so associating themselves as aforesaid for the purposes aforesaid having, in all things, strictly complied with all and every the requisites of said law, have, from time to time, since the passage of said law, and since their formation, establishment and organization and association, as aforesaid, and before the date of this writ, under and by virtue of the authority of said law, issued and put in circulation, as currency, divers bills or notes, commonly denominated bank notes or bank bills, to a large amount, to wit the amount of thirty thousand dollars and upwards of said bills of the various denominations commonly used and circulated by banking institutions, all being in the form and executed, countersigned and in all particulars made and got up in exact conformity with the requisitions of said act, which said bills or notes have had and,—but for the grievances committed by the defendants herein complained of, —would still have a large and extensive circulation in the United States. But the plaintiffs aver that said Suffolk Bank, the defend-

ants, being unwilling for, and strongly averse to, the existence of any other bank, save such as will pay tribute to them, the said Suffolk Bank, in such measure as they, in their malice and exorbitancy shall please to demand, and such as that description of banks, which, in their total blindness to their own interests, privileges, rights and reputation and entire disregard of the rights, privileges, honor and respectability of the communities in which they exist and which gave them existence, will, obsequiously and submissively, consent to pay, fraudulently, maliciously, corruptly and wickedly intending and ardently desiring to defraud and injure the plaintiffs, as such association aforesaid, and to bring them, as such association, and their said bills or notes, into discredit and disgrace in all places where such association is known and where said bills or notes are circulated and to prevent the circulation of said notes or bills and of any or all of the notes or bills of the plaintiffs, and with the view ultimately to break down, destroy and annihilate the plaintiffs, as such association aforesaid, and stop their business as such banking association or to compel them, the plaintiffs, to employ the said Suffolk Bank, the defendants, to *redeem*,—as it is by them, the defendants called,—the bills or notes of the plaintiffs in said Boston and to pay said defendants tribute or an exhorbitant bonus or compensation for such *service*, although, not the least benefit or accommodation is or can be derived therefrom to the plaintiffs, or to any other person, persons, bodies or communities private or public whatever, save the Suffolk Bank, the defendants,—have, from time to time and at divers times, since the issuing of the bills or notes by the plaintiffs, as aforesaid and before the date of this writ, bought up and taken and kept out of circulation a large amount, to wit the sum of twenty thousand dollars of the bills and notes of the plaintiffs, issued as aforesaid, and to the end and with the unrighteous and sordid design aforesaid, have from time to time, within the period aforesaid, refused to pass or exchange said notes or bills for gold or silver coin, the lawful currency of the United States or for any other and good money, though frequent opportunities for so doing have accrued to the defendants within the space aforesaid, to wit at said Boston, but have detained and kept the same bills or notes of the plaintiffs out of circulation and have, from time to time, within the term of time aforesaid, with the

malicious intent aforesaid, called on the plaintiffs, at their banking house aforesaid, with large sums of said bills or notes of the plaintiffs, varying from five to eleven thousand dollars, and demanded and compelled the plaintiffs to pay the specie on the same, in order to drain the vaults of the plaintiffs of their specie and keep their bills out of circulation and thus to embarrass and perplex the plaintiffs, with the evil intent and for the vile purpose aforesaid, whereby and by reason of the premises, the plaintiffs have been greatly injured by the defendants in their said business of banking, and harrassed and oppressed, and deprived of a great amount of profit, which the plaintiffs would, otherwise, have derived from said businesss, to wit the sum of ten thousand dollars, to wit at Royalton aforesaid."

To this declaration the defendants demurred. The county court, December Term, 1853,—COLLAMER, J., presiding,—adjudged the declaration insufficient and rendered judgment for the defendants. To this decision the plaintiffs excepted.

*J. S. Marcy and J. P. Kidder*, for the plaintiffs.

*O. P. Chandler and Converse & Barrett*, for the defendants.

The opinion of the court was delivered, at the circuit session in September, by

BENNETT, J. This case comes up upon a general demurrer to the plaintiff's declaration, and, of course, the only question is whether a legal cause of action is set out in the declaration. It may with truth be said, that an attempt to maintain an action upon the facts stated in the declaration *is novel ;* but this does not prove *conclusively* that the action cannot be sustained in this age of progress. The facts stated in the declaration are briefly that the plaintiffs, being a banking corporation, had put in circulation a large amount of their bills, and that the bills would have had a continued and extended circulation, had it not been for the acts of the defendants, to the great gain and profit of the plaintiffs ; and that the Suffolk Bank bought them up from time to time, and have refused again to exchange them for other money, and kept them out of circulation ; and have called upon and compelled the plaintiffs to redeem the bills in specie.

The declaration charges that the acts of the defendants were performed with *wicked* and *corrupt motives*, and with an intent to injure, oppress and embarrass the plaintiffs in their business, whereby they have been damnified in their business, harrassed, oppressed, and deprived of great gains, as they say, which they otherwise would have made, to wit, ten thousand dollars. It is hardly necessary to say that the plaintiffs issued their bills as a *circulating medium* in lieu of specie currency, and that it was the right of the defendants, in common with others, to purchase in their bills, and thus withdraw them from circulation, until they should choose again to put them in circulation or call upon the plaintiffs to redeem their promise by the payment of their bills in specie.

The defendants are not charged with doing any act in itself considered wrong; but it is attempted to make the acts *actionable* by reason of the bad motive imputed to the defendants in doing them. This case, seems to us, but an ordinary one of a creditor calling upon his debtor for his pay, at a time, and at a place, and in a manner to which the debtor has no right to make objection. It was morally and legally the duty of the plaintiffs at all times to be ready and willing to redeem their bills, and if it has operated to their injury to be called upon at any particular time to redeem a particular amount, it is " *damnum absque injuria.*" Here was no *unlawful conspiracy* by the defendants with others, either to do a lawful act in an unlawful manner, or an unlawful act to the injury of the plaintiffs; but the declaration charges, in effect, that the acts were done from bad *motives* in the defendants. This, we think, is not enough. *Motive* alone is not enough to render the defendants liable for doing those acts, which they had a right to do. It is too well settled to need authority that *malice* alone will not sustain an action for a *vexatious* suit. There must also be want of probable cause. This principle is enough to settle this case. If the defendants could not be sued for instituting suits *maliciously* to collect pay upon the plaintiff's bills which they lawfully held, much less could they be sued for simply calling upon the defendants for pay, without the intervention of a suit, though done *with malice*. It may be true that sometimes *the consequences* attending an act may serve to give character to that act, and the rule has become

established, and grown into a maxim that a man must use his own rights with due regard to the rights of others ; but this principle does not apply to the present case. Here the act of presenting the plaintiff's bills for payment, has no natural connection with any injurious consequences to follow from it, and if such consequences follow, they must be *fortuitous*, and cannot give character to the act so as to render it unlawful. See *Williams* v. *Hunter*, 3 Hawks, 545. Aso 31 Maine, 438.

It seems impossible to distinguish the case made in the plaintiff's declaration from an action for *maliciously* holding a party to bail, or sueing out a writ when nothing is due, in which case the gist of the action is *malice* and the *want* of a *probable cause*, and the principle of that class of cases must govern this.

The result is, the judgment of the county court is affirmed.