OWEN D. PHELPS, Appellant, *v.* GEORGE H. NOWLEN, Respondent.

A party is not liable for the consequences of an act done upon his own land, lawful in itself and which does not infringe upon any lawful rights of another, simply because he was influenced in the doing of it by wrong and malicious motive; the courts will not inquire into the motives actuating a person in the enforcement of a legal right.

Upon defendant's land was a spring which was surrounded by an embank-
ment, the effect of which was to raise the water in a well upon plaintiff's
land. Defendant, not for his own benefit, but simply with intent to
divert the water from plaintiff's well, dug a ditch through the embank-
ment, thus restoring the water to its natural course; the effect of which
was to lower the water in the well to plaintiff's injury. In an action
for damages and to restrain the diversion of the water; *held,* that the
action was not maintainable.

*Panton* v. *Holland* (17 J. R., 92) distinguished.

*Trustees* v. *Youmans* (50 Barb., 316) limited.

(Argued December 3, 1877; decided January 15, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court, in the fourth judicial department, affirming a
judgment in favor of defendant, entered upon a decision of
the court at Special Term.

This action was brought to recover damages for the alleged
malicious acts of the defendant in drawing off water from
plaintiff's well, and to enjoin the commission of further
similar acts.

The court found substantially the following facts: The
parties were the owners of adjoining premises in the village
of Avon. Upon defendant's land was a mineral spring,
around which an embankment had been formed, partly
by the action of the water and partly artificial, which raised
the water in the spring. In September, 1872, plaintiff
dug a well upon his land, which struck a vein of mineral
water, which rose in the well to within thirteen feet of the
surface; plaintiff conducted water from the well to a bath-
house and a fountain by means of a pipe laid in the ground,
which entered the well about three and a half feet below the
surface of the water, and gave an abundant supply of water.
Defendant, aware of the operations and constructions of
plaintiff, and soon after the completion thereof, dug a ditch
through the embankment around his spring, lowering the water
about five feet. There appeared to be some subterranean
communication between plaintiff's well and defendant's
spring, and soon after the digging of the ditch, and in conse-
quence thereof, the water in the well was lowered so that the

surface of the water fell below the opening of the pipe, and the supply of water to plaintiff's bath-house and fountain was cut off, and plaintiff suffered damage to a large amount.

The court also found as follows : " That when the defendant dug his ditch, as above stated, he supposed that the water in the plaintiff's well communicated in some hidden and undefined way with the water in his spring ; that he expected the lowering of the spring would be followed by a diversion of sub-surface water from the well, and a consequent depression of the surface of the water in the well; that he intended to produce that result; that he dug the d².ch for that purpose and no other, and that in so far as such intent and purpose, under the circumstances above found, can constitute malice, his motive was malicious."

As conclusions of law, the court found : " That the defendant had an absolute right to dig the ditch and lower the spring on his own land, as above stated, and that with whatever motive he acted, he invaded no legal right of the plaintiff in so doing. That the plaintiff had no right to have the said spring maintained at any given height upon the defendant's land for his benefit or convenience. That the diversion of sub-surface water from the plaintiff's well in consequence of the lowering of the defendant's spring, and the hurtful effects which resulted to the plaintiff from such diversion, as above stated, do not constitute a legal injury, and are not the subjects of legal redress." And, therefore, that the plaintiff was not entitled to the relief demanded in the complaint.

*George F. Danforth*, for appellant. Defendant was liable for the damages to plaintiff's land resulting from his acts. (*Ellis* v. *Duncan*, 21 Barb., 67; *Davies* v. *Jenkins*, 11 M. & W., 755; *Winterbottom* v. *Wright*, 10 id., 109; *Howland* v. *Vincent*, 10 Metc., 371; 3 Kent's Com., 439, 445; Broom's Maxims, 7th Am. ed., 364; *Carhart* v. *Aub. Gas Co.*, 22 Barb., 308; *Radcliff's Exrs.*, v. *Mayor*, etc., 4 Coms., 202; *Hay* v. *Cohoes Co.*, 2 id. 162.) Defendant was liable because his acts were done maliciously. (2 Domat's Civil Law

[Cushing's ed.], §§ 1581, 1976; Washb. on Easements [ed. 1863], 364, § 3; 14 Alb. L. J., 63; *Acton* v. *Blundell*, 12 M. & W., 324, 336; Loyd on Compensation, 109; *Pixley* v. *Clark*, 35 N. Y., 530; *Cooper* v. *Barber*, 3 Taunt., 99; *Smith* v. *Kendrick*, 7 M. G. & S., 546; *Chasemore* v. *Richards*, 7 H. of L. Cas. 387; *Rylands* v. *Fletcher*, L. R. E. & J. Apps. 330; *Smith* v. *Kendrick*, 7 C. B., 515; *Dexter* v. *P. Ag. Co.*, 1 Story C. C. R., 387; *Wheatley* v. *Baugh*, 25 Penn. St., 558; *Roath* v. *Driscoll*, 20 Conn., 533; *Greenleaf* v. *Francis*, 18 Pick., 117, 122; *Carson* v. *W. R. R. Co.*, 8 Gray, 424; *Howland* v. *Vincent*, 10 Metc. 373; *Parker* v. *B. & M. R. R. Co.*, 3 Cush., 114; *Brown* v. *Illius*, 25 Conn., 583; *Sweet* v. *Cutts*, 50 N. H., 447; *Panton* v. *Holland*, 17 J. R., 92; *Smith* v. *Adams*, 6 Paige, 435; *Carhart* v. *A. Gas Co.*, 22 Barb., 308; *Farrand* v. *Marshall*, 21 id. 409; *Relyea* v. *Beaver*, 34 id., 552; *Trustees of Delhi* v. *Youmans*, 50 id., 316; *Hay* v. *Cohoes*, 2 Cow., 159.)

*J. C. Cochrane*, for respondent. Plaintiff's act in diverting the water from its natural course was illegal, and he might have been restrained from doing it. (*Smith* v. *Adams*, 6 Paige, 435; *Arnold* v. *Foot*, 12 Wend., 330.) Defendant had a right to remove the embankment and construct a ditch upon the surface of his own land. (*Babcock* v. *Allen*, 32 How., 439; *Mumford* v. *Whitney*, 15 Wend., 380; *Clinton* v. *Myers*, 46 N. Y., 511.) Defendant's motive was not improper, and of no consequence. (*Mahar* v. *Brown*, 13 Wend., 261; *Chatfield* v. *Wilson*, 28 Vt., 40; *So. R. Bk.*, v. *Suffolk Bk.*, 27 id., 505.)

MILLER, J. The act of the defendant in digging a ditch through the mound which had been formed around the spring on his land, and which had raised the surface of the water therein, was *prima facie* lawful, and a proper exercise of his right, as the owner of the land, to the enjoyment of the subterranean waters which flowed under the same. The effect of the embankment was to raise the water in the well,

which had been constructed upon the land of the plaintiff, higher than it naturally would have been, and the plaintiff had no right, by prescription or otherwise, to have it maintained by the defendant at that elevation.

The use of the water, as thus increased, was only enjoyed by the plaintiff by the mere permission or license of the defendant, which the latter could revoke at his pleasure. (*Babcock* v. *Utter*, 32 How., 439; *Mumford* v. *Whitney*, 15 Wend., 380; *Clinton* v. *Myers*, 46 N. Y., 511.) The defendant was authorized to restore the water to its natural course for any legitimate and proper purpose, and to this extent, at least, was justified in opening the mound and removing any obstacle to the natural and ordinary flow of the water. That the effect of lowering the surface of the defendant's spring was to cause a diversion of water from the plaintiff's well, and to prevent that full supply which otherwise, and but for the defendant's act, would have been furnished, could not interfere with the exercise of the defendant's right to control the water on his own land.

The object of the defendant in digging the ditch, according to the finding of the judge, was not to lower the water for his own benefit and advantage, but with the intent to produce a diversion of the water from the plaintiff's well; and, in so far as such intent and purpose, under the circumstances, can constitute malice, his motive was malicious. The question arises, then, whether the defendant is liable for the consequences of an act done upon his own land, lawful in itself, because he was influenced by a motive which is alleged to be wrong, and the object was to prevent the use of water by an adjoining owner, which he would not have enjoyed but for the mound upon the land of the defendant. The right of an owner of land to a free and uninterrupted use of the same is absolute and complete, so long as he does not infringe upon the rights of his neighbors. And as a result of this well-settled principle, such owner is also entitled to the enjoyment and use of all springs hidden beneath the surface of the soil, and flowing therein by means of subter-

ranean and unknown channels, for all legitimate and proper purposes. In the case at bar, the plaintiff was enjoying the use of water which had been provided by the embankment on defendant's land, and the act of the defendant merely restored the water thus temporarily retained, to its previous natural course. It is not by any means clear that the assertion of a lawful right on one's own land, even although it is not designed to benefit the party who seeks to maintain it, and may injure an adjoining owner, constitutes legal malice for which a remedy by action exists. Strictly speaking, such an act is but a vindication of what the law sanctions, and, of itself, furnishes no just ground for complaint. It may have been lawfully done, by the defendant, to prevent a diversion of water, the use of which he claimed, and which if allowed to continue, by lapse of time, might ripen into a claim of right by prescription; and hence, although the ostensible object was to diminish water which has been unlawfully appropriated by another, the intent cannot well be considered as malicious, or the purpose a wrongful one.

That it proves injurious to another, is more the fault of the party who reaps a benefit from that which does not belong to him, than of the one who was originally entitled to it, and is only claiming his just rights. While the law does not allow an owner to erect on his own land, near the house of another, structures for carrying on an unwholesome and obnoxious trade, which may poison the air, and constitute a nuisance that interferes with a proper enjoyment of the property of an adjoining owner, and does not permit a person, in any form, to disturb a legitimate use of another's property, it also does not interpose its shield for the protection of such owner in what does not actually belong to him. If the exercise of a lawful right can be regarded as malicious and willful, then the obstruction of lights of a neighbor which are not ancient, and not entitled to protection for that reason, might be considered as a ground for the interposition of the courts, and the revocation of a temporary license to pass over the lands of another as unauthorized. The motive,

be it what it may in such a case, can have no effect, and does not prevent the assertion of the right of the real owner. (*Mahan* v. *Brown*, 13 Wend. 261).

There are cases in this State besides the one last cited, which sustains the principle that a party is not debarred from the vindication of a legal right because he is actuated by an improper motive. In *Pickard* v. *Collins* (23 Barb., 444), it was held that the injury arising by the use of one's own land to another's property must be a legal injury; an invasion of some legal right, as erecting a building, or carrying on a business which so obstructs the enjoyment of another of his property, as to amount to a nuisance, or removing the soil or placing something on the soil of another, and that the liability of the defendant does not depend upon the *motives* with which the erection was made. It was said that the fallacy of a contrary doctrine which was contended for, " consists in its overlooking a fatal defect in a right of action in such a case, the absence of any legal injury. Bad motives in doing an act which violates no legal right of another cannot make that act a ground of action." The case of *Mahan* v. *Brown* (*supra*), is reviewed at length and approved in the case last cited. In *Clinton* v. *Myers* (46 N. Y., 511), the action was brought to restrain the defendant, the owner of the land upon the stream below, from opening the gate of plaintiff's dam and letting off the accumulated waters, he claiming a right to do so, and it was held that it was immaterial that the defendant insisted upon his right to the natural flow of the water in the stream from a bad motive and for the purpose of annoying the plaintiff, and that a court has no power to deny a party his legal right, because it disapproves his motives for insisting upon it. These cases tend to establish the doctrine in this State, that if a man has a legal right courts will not inquire into the motive by which he is actuated in enforcing the same. A different rule would lead to the encouragement of litigation, and prevent in many instances a complete and full enjoyment of the right of property which inheres to the

owner of the soil. An idle threat to do what is perfectly lawful, or declarations which assert the intentions of the owner might often be construed as evincing an improper motive and a malignant spirit, when in point of fact they merely stated the actual rights of the party. Malice might easily be inferred some times from idle and loose declarations, and a wide door be opened by such evidence to deprive an owner of what the law regards as well-defined rights. I have been unable to discover any decision in this State which is in conflict with the views stated.

In *Panton* v. *Holland* (17 J. R., 92), some remarks are made as to acts, lawful in themselves, which became actionable if done with malice. That case was an action against an owner of adjoining lands, who, while digging for a lawful purpose on his own land, caused an injury to his neighbor's house, and is not in point. The doctrine laid down in the opinion in *The Trustees of Delhi* v. *Youmans* (50 Barb., 320), is *obiter*, and is not upheld by the authorities relied upon. The principle discussed is also supported by other cases. In *Chatfield* v. *Wilson* (28 Vt., 49), the defendant placed within his own land, and near the line of the plaintiff's land dry hard earth which prevented the plaintiff from availing himself of the water which had before percolated into the plaintiff's land, and supplied a reservoir placed therein from which the water had been drawn and used by him, and it was held that the act being lawful of itself could not subject the defendant to damages, unless by reason thereof some right of the defendant had been violated. That the maxim *sic utere tuo est alienum non lædas* applies only to cases where the act complained of violates some right, and an act legal in itself violating no right cannot be made actionable upon the ground of the motive which induced it. This case goes further than is required in order to sustain the defense here. See, also, *South Royalton Bank* v. *Suffolk Bank* (27 Vt., 505), which upheld the same rule as to the motive. In a subsequent case, *Harwood* v. *Benton* (32 Vt., 737), the court refer to the decision in *Chatfield* v. *Wilson* in respect to

excluding a wanton and improper motive as an element on the ground of the defendant's liability, remarking that in the present case there is no imputation of such motive, but express no opinion thereon while they indorse the main point " as a sound exposition and application of the law."

There are cases in other States where language is employed which, it is claimed, upholds the doctrine that an act lawful in itself may be made unlawful, because the party who does it is actuated by malice. (*Wheatly* v. *Baugh*, 25 Penn., 528; *Roath* v. *Driscoll*, 20 Conn., 533; *Carson* v. *W. R. R. Co.*, 8 Gray, 423; *Howland* v. *Vincent*, 10 Metcalf, 373; *Parker* v. *B. & M. R. R. Co.*, 3 Cush., 114; *Greenleaf* v. *Francis*, 18 Rich., 117, 122.) The remark of the court in *Greenleaf* v. *Francis*, that the rights of the defendant should not be exercised from mere malice, are referred to in *Chatfield* v. *Wilson* (*supra*) ; and it is said that, as applied to that case, or the one then at bar, " the position was unsound and against principle and authority." Without considering the cases last cited at length, it is enough to say that they are not directly in point, and none of them, we think, go far enough to sustain the right of the plaintiff, in the case at bar, to the relief sought, under the circumstances here presented. Some English cases are also relied upon as sustaining the doctrine contended for by the plaintiff's counsel. In a leading decision (*Acton* v. *Blundell*, 12 M. & W., 338), the defendant found and sunk a coal mine on his own land, the effect of which was to cut off the under-ground veins and currents which supplied the plaintiff's well, and to prevent his operating his mill. It was held that there was a marked and substantial difference between the law as to the right to enjoy the under-ground spring of water, and that by which a water-course flowing on the ground is governed; that the case does not fall within the rule which obtains as to surface springs, and in analogy therewith, and that the person who owns the surface may dig therein and apply all that is there found according to his own free-will and pleasure; and if, in the exercise of such right, he intercepts or drains off the water collected from under-

ground springs in his neighbor's well, this inconvenience falls within the description of *damnum absque injuria*, which can not be the ground of an action. In the head-note of the case, it is stated that the owner, in carrying on the mining operations in the *usual manner*, drained away the water. The civil law, as stated by MARCELLUS, was cited, and MAULE, J., translated the original text as meaning that "if a man digs a well in his own field, and thereby drains his neighbor's, he may do so, unless he does it maliciously." It will be seen that there was no question in the case last cited as to the motive of the defendant, and that point was not distinctly passed upon, nor do we think it necessary to determine the question here; but, even if the doctrine of the civil law, as defined, might apply to a case where a man deliberately and with malice prepense set to work to drain off and destroy his neighbor's well, yet, giving to the rule stated full force and effect, it is quite obvious that it has no application to the present case.

In *Chasemore* v. *Richards* (7 House of Lords Cases 387), it is laid down that the owner of land has a right to the enjoyment of the land and to the underground waters upon it, and he may, in order to obtain that water, sink a well, but that he ought to exercise such right in a reasonable manner and with as little injury to his neighbors' rights as may be, and it is said that "the civil law deems an act otherwise lawful in itself illegal, if done with a malicious intent of injuring a neighbor, *animo vicino nocendi.*" So, also, it is said in some of the reported cases, that the owner of land may be liable when he uses his land as an instrument of injury or malice, or is actuated by a malicious intent.

The rules last stated may, perhaps, be applied in cases where it is entirely obvious that the act was done solely for the purpose of inflicting a wrong, and with no intention of vindicating a right or preventing a wrong being done to the interests of another. But not a single case is cited which sustains the doctrine that the owner of land cannot assert a legal right, while, as we have seen, there is considerable

authority in a contrary direction, as well as the *dicta* of some of the most learned and able judges.

It is said by Mr. Angell, "the question has been raised and discussed, in several of the cases cited, whether a land-owner, who by acts done upon his own ground, has inter-cepted underground waters, and prevented them from percolating into another land-owner's well, or has actually abstracted water from such well, will be liable therefor in consequence of being actuated in his operations by *malicious motives*. It will be observed, however, that in no one of these cases has a land-owner been held liable for such acts in any court of last resort merely on this ground." (Angell on Water-courses [6th ed.], § 114, p. 188.) Washburn, in his work on Easements (3d ed., p. 475), also says : "The pres-ence or absence of malice, as a criterion of liability for digging in one's own field, is clearly stated in the civil law, and has been assumed as essential in determining similar questions at common law. But if one has a legal right to do certain acts in regard to his own property, it is difficult to imagine how he should forfeit those rights by doing them from unfriendly motives towards the party who is affected by them." The learned author cites from 8 Gray, 410, where the court says, that, "if the defendant had authority and acted within the scope of it, he is not a trespasser because his motives or pur-poses, with regard to the plaintiff, were unkind or malicious."

The result of the examination of the subject, is that neither upon principle nor authority was the defendant liable for doing a lawful act upon his own premises. In this aspect of the case, it is not necessary to determine whether, under a different state of facts, the motive or intent or the malice of the owner of the land should be taken into consideration.

For the reasons given, the judgment should be affirmed.

All concur, except EARL, J., dissenting; CHURCH, Ch. J., and ALLEN, J., absent.

Judgment affirmed.