JAMES M. ALLEN AND GEORGE W. BULLOCK v. DANIEL B. KINYON.

*Damages for conversion by wrongful levy.*

A sheriff has no right to continue to sell goods on which he has levied, after the execution is satisfied.

The rule of damages in trover, in the absence of special facts, is

41 MICH.—36.

| | |
|---|---|
| 41 | 281 |
| 69 | 393 |
| 41 | 281 |
| 71 | 11 |
| 41 | 281 |
| 79 | 43 |
| 41 | 281 |
| 81 | 232 |
| 41 | 281 |
| 96 | 618 |
| 41 | 281 |
| 103 | 57 |
| 103 | 71 |
| 41 | 281 |
| 107 | 446 |

the cash value of the property with interest from the time of the conversion. Evidence of an appraisal made for the plaintiff at what the property would be worth to any one in the business in which he had been engaged, is inadmissible in the absence of any claim for specific damages.

In trover for a wrongful levy, defendant's motives are immaterial.

A conveyance is fraudulent if the grantor meant to hinder or defraud *any* of his creditors, and a charge conveying the idea that he. must have meant to defraud *all* his creditors is misleading.

Error to Hillsdale. Submitted June 12. Decided July 1.

TROVER. Defendants bring error.

*James S. Galloway, Dickerman & St. John* and *Norris & Uhl* for plaintiffs in error.

*E. L. & M. B. Koon* for defendant in error. Damages in trover should be the reasonable value of the article converted, to the plaintiff in his business, *Allison v. Chandler,* 11 Mich., 555.

COOLEY, J. Kinyon sued Bullock and Allen in trover for the conversion of certain horses, carriages, harnesses and other articles of personal property constituting a livery stock, with which he was carrying on business when they were seized and taken by the defendants from his possession. The defendants justified under an execution issued out of the circuit court for the county of Hillsdale, in chancery, in favor of Allen against Lyman Kinyon, rendered in a foreclosure case, and upon which a deficiency remained of some $1,200, after the mortgaged premises had been sold. Bullock was sheriff, and levied the execution. The theory of the defense was that the stock levied upon was wholly or in part the property of Lyman Kinyon, who was the father of the plaintiff, and had been transferred by him to the plaintiff for the purpose of preventing Allen from collecting his demand. The plaintiff admitted that a small portion of the property had been given to him by his father while he was a minor; and it appeared that he

afterward went into partnership with his father in the livery business, and that in doing so it was agreed that the stock put in should be equally owned by the two, and the profits of the business be shared equally, notwithstanding most of the stock was put in by the father. The plaintiff accounted for this arrangement by showing that the age and infirmities of the father prevented his giving essential assistance in the business. After a time the father sold out to the plaintiff, the latter assuming the payment of the copartnership debts including some upon which only the father was liable. The plaintiff gave evidence that he immediately proceeded to pay or arrange these debts.

After the sheriff made his levy, he advertised and sold the property but instead of limiting himself to a sale of sufficient to satisfy the execution with costs and expenses, he sold enough to realize a surplus of more than four hundred dollars. Continuing to sell after his execution was satisfied was lawless conduct, and could not be justified on any theory. But as the plaintiff claimed that he had become the *bona fide* owner of all the property and sought to recover the value of the whole, the case went to the jury on two main questions; *first,* whether the transfers from Lyman Kinyon to the plaintiff were void as against his creditors or against Allen as one of them; and if not, then *second,* what damages the plaintiff was entitled to recover for his injury in having the property seized and sold.

Many errors in the reception and rejection of evidence are relied upon, but on an inspection of the record we are not satisfied that any of them is well assigned. As the questions raised by the assignments are merely whether familiar principles of law were correctly applied under the circumstances of the case as it stood when the evidence was offered, we have not considered it important to cumber the reports with a detailed examination of them. But, as the case must go back for a new trial for an error in the instructions, it may pre-

vent possible misapprehension if we direct attention to two or three peculiarities of the case, which came near leading to error on the trial now under review.

I. In trover the rule of damages is the cash value of the property with interest from the time of the conversion, when no special circumstances require a different rule. *Ripley v. Davis*, 15 Mich., 75; *Bates v. Stansell*, 19 Mich., 91. In this case special damages were not claimed, and the rule to be applied was plain and simple. It appeared, however, that plaintiff had had an appraisement of the property made, in which the value was estimated at what it would be worth to him or to others in the particular business he had been carrying on; and this appraisement was given in evidence. No exception distinctly presents the question of the admissibility of this appraisement and the judge took pains to instruct the jury that the market value was the proper measure of damages. But the evidence was well calculated to direct the attention of the jury to an erroneous standard of computation, and as it can never be certain that when admitted such evidence will not improperly influence the jury, it ought not to be received or offered.

II. The plaintiff also gave some evidence tending to show that Allen, in causing the levy to be made, was influenced by malice growing out of rivalry in business. That fact if established could have had no legitimate bearing upon any question at issue in the case. If the property seized belonged to Lyman Kinyon, Allen had a right to levy upon it, and his motives could not make his act a tort; *Jenkins v. Fowler*, 24 Penn. St., 308, 310; *Mahan v. Brown*, 13 Wend., 261, 265; *Hunt v. Simonds*, 19 Mo., 583; *South Royalton Bank v. Suffolk Bank*, 27 Vt., 505; if it did not, and he had no such right, his motives were still immaterial under the declaration, as the dispute was then narrowed down to the value of the property converted. The value could not

depend upon or be affected by the malice of the parties.

III. In his instructions to the jury the judge was evidently solicitous to submit the case with entire impartiality and fairness. The defendants framed seventeen different instructions, covering the whole ground of fraud and badges of fraud in conveyances by debtors to the prejudice of creditors, all of which were given by the judge, with only a slight—and entirely proper—change in one of them. But the judge accompanied the giving of them with the following: "All of the foregoing requests and the principles of law therein stated, are to be taken by the jury subject to the following modification or explanation, that is: If you find that the transfer of the property in question from Lyman to Daniel Kinyon, was made for the purpose of paying or securing the payment of *bona fide* debts owing by Lyman Kinyon, and that the property transferred was applied, and intended honestly and in good faith to be applied, to the payment of Lyman Kinyon's debts, reserving no part of the consideration to himself, and that the amount of the debts assumed and to be paid or secured thereby, was all the property transferred was fairly worth, then such sale was not necessarily fraudulent or void as to defendant James M. Allen, although the intent of the parties making the transfer was to prevent Allen's levying on the same, and the effect of the transfer might have been to hinder or delay him in the collection of his debt, because a creditor has a right to apply his property to the payment of certain debts, to the exclusion of others, and the law does not make such transfers void, if the full value of the property transferred is applied to the payment of debts, even though other creditors may thereby be hindered or delayed in the collection of their debts. But if he reserved any interest or benefit to himself and intended to hinder, delay or defraud *all* his creditors, and not have his property applied to the payment of his debts as far as it would go, the conveyance would be fraudulent and void."

We cannot avoid a conviction that, under the peculiar facts of this case, the last sentence in this paragraph was calculated to mislead the jury and that it may in fact have misled them. It certainly was not necessary, in order to render the conveyances to plaintiff void, that Lyman Kinyon should have intended to hinder, delay and defraud *all* his creditors, and there

was no pretense that he indulged such an intent. It was quite sufficient if he intended only to defraud Allen, which was all that was charged upon him. The judge was entirely right in saying that the intent to prevent Allen levying the execution would not of itself defeat a transfer of property to pay other creditors; but as questions were raised regarding the *bona fides* of some of the debts which plaintiff assumed, it was of the utmost importance that no instructions should be given which would lead the jury to suppose or assume that nothing but a purpose to defraud creditors generally would render the transfer voidable.

The judgment must be reversed with costs of this court, and a new trial ordered.

The other Justices concurred.