(Franklin County, Ohio, Common Pleas.)

## THE WYANDOT CLUB COMPANY, v. A. C. SELLS.

1. The owner of lands who, from "unmixed malice," diverts water which either percolates through, or flows in definite and well known subterranean channels under, his own or his neighbor's land,, and obstructs, prevents and intercepts said water from flowing into a spring on his neigbor's land where it would have otherwise flowed, is amenable in damages to the neighbor whose spring is thereby injured or destroyed.
2. Frazier vs. Brown, 12 Ohio St., 293, discussed and distinguished from the case at bar.

PUGH, J.

The question raised by the demurrer to the plaintiff's amended petition is identical with that which was raised by, and decided on, the demurrer to the original petition, the decision having been rendered by Judge Badger.

The complaint is, that the defendant, by digging a hole within a few feet of the plaintiff's line, diverted the water from a definite and well known channel under the plaintiff's land, which flowed into a spring on its land, and abstracted, prevented and intercepted the flow of said water, which ought to have flowed into the plaintiffs' said spring. It is charged that the defendant was actuated by unmixed malice, and that his purpose was neither for the ornament or use of his own lands, which adjoined the plaintiff's lands.

The rule is deeply rooted in our juris-prudence, that where a proprietor of land digs a well or a spring on his own land which absorbs water from the substrata, and diminishes the supply enjoyed by neighboring proprietors, the loss suffered by the latter affords no ground of action. This is the rule as it stands isolated from its limitations and qulifications.

Our Supreme Court applied this rule to a case, where the proprietor dug a hole on his own land for purposes connected with the use of his own land, by which he cut off or diverted subterranean waters which had always been accustomed to percolate and ooze through his own land, to the land of an adjoining proprietor, and there formed the source of a spring on the latter's land.

,. Frazier vs. Brown, 12 Ohio St., 293.

To this rule, in some jurisdictions at least, there is a firmly settled exception. If the waters diverted were already collected in a definite channel, the proprietor who diverted them, from malice or without malice, would be answerable for the loss in damages.

The Supreme Court, in the case cited, also decided that the motive which actuated the diversion of the water was a "matter of indifference," if the act itself was lawful.

(Second paragraph of syllabus, 12 Ohio St. 249.)

And yet the court further said it was a query, whether it would have made any difference if the hole had been dug from motives of "unmixed malice," and was designed for no purpose of either ornament or use."

(Third paragraph of syllabus, Id. 24.)

According to this decision, the law, then, is that if the design of the abstractor of the water was either ornament or use of his own property, he is absolved from all liability, no matter what damage he may have entailed on the adjoining proprietor, and no matter if he was actuated by malice against the latter.

But, if neither use nor ornament of his own property was within his purpose, and he was moved solely by "unmixed malice," he may, or not, be liable. The question raised on that condition of facts, the court left undecided. This is all that can be said of the law in Ohio. It leaves this court to decide it by what may be considered the best reason or best considered authority.

Outside of Ohio, in other states, the adjudged cases are numerous. Probably the majority sustain the conclusion that the commission of a lawful act is not made actionable, because it proceeded from a malicious motive. Some of the cases in which the question is discussed, and in some of which the decisions went to this length, are the following:

Greenleaf vs. Francis, 18 Pick. 117; Brown vs. Illius, 27 Connecticut, 84; 71 Am. Dec., 49; Chatfield vs. Wilson, 28 Vt., 49; Roath vs. Driscoll, 20 Conn, 533; 52 Am. Dec., 352; Wilson vs. Bedford, 108, Mass, 261; 11 Am. Rep. 419;City of Emporia vs. Soen, 25 Kansas, 588; 37 Am. Rep. 265; Village of Delhi vs. Youmans, 45 N. Y., 362; 6 Am. Rep. 100; Bliss vs. Greeley, Id. 671; 6 Am. Rep. 157; Hongan vs. Milwaukee, 35 Iowa, 558; 14 Am. Rep. 502; Bloodgood vs. Ayers, 37 Hun. 356; 108 N. Y. 400; 2 Am. St. Rep., 443; South Pac. Co. vs. Dufour, 95 Cal. 615; Phillips. vs. Nowlen, 72 N. Y. 39: 28 Am Rep. 93; Wheatley vs. Bough, 25 Pa. St., 528; 64 Am. Dce. 721; Lybe's Appeal, 106 Pa. St., 626; Glendon Iron Co. vs. Uhler, 75 Pa. St. 326; 51 Am. Rep 542; Haldeman vs. Bruckhart, 45 Pa. St., 514; 84 Am. Dec., 511.

In Haldeman vs. Bruckhart, supra, it was declared that a land-owner would be responsible for maliciously or negligently diverting even an unknown subterranean stream to the damage of the lower proprietor; and it was decided that if a land owner, in mining for ore on his own land, should drain water from the land of an adjoining owner, he would not be liable in damages, if there was no evidence of malice or negligence; the injury being damnum absque injuria. The converse, therefore, would be true, namely, if there was evidence of malice or negligence he would be liable in damages.

Again in Wheatley vs. Baugh supra, while

the general rule, as I have stated it, was unequivocally endorsed, still the court recognized the distinction between the diversion of waters collected by ordinary percolations, and waters collected in currents and streams,—currents and streams which are found in lime stone regions, especially those which "pursue their course in great volume and power, and then, emerging from their caverns, furnish power for machinery, or supply towns and settlements with water for all the purposes of life." It was also said: "Neither the civil law nor the common law permits a man to be deprived of a well or spring, for the mere gratification of malice."

In Parker vs. Boston, etc., R. R. Co., 3rd Cush., 107, recognition was made of the right which each proprietor has to the use of his own lands, but, at the same time, the railroad was required to respond in damages for destroying the plaintiff's springs on his land adjacent to the defendants' right of way, because the destruction of the spring was not required for the purposes of the owner of the land through which the excavation was made.

In the strongest case which supports the rule that there is no liability for a lawful act done maliciously, (Phelps vs. Nowlen, 72 N. Y., 39) it is conceded that there may be a liability "where it is entirely obvious that the act was done for the purpose of inflicting a wrong, and with no intention of vindicating a right or preventing a wrong being done to the interests of another."

In Chesley vs. King, 74 Me., 164; 43 Am. Rep., 569, it was admitted that, if the proprietor of land, for the convenience of himself or the improvement of his property, digs a well or makes other excavations within his own bounds, he will not be subject to a claim for damages, although the effect may be to cut off and divert the water which finds its way through hidden veins, which feed the well or spring of his neighbor. But it, also, insisted that it was equally as well rooted law, that if he made his excavation, not for the purpose of accomodating or benefiting himself or others, but merely to do a damage to his neighbor, who has some qualified right in the spring, he is amenable in damages."

This is the best consiaered and best reasoned of all the reported cases. Many of the cases which support the opposite of the last proposition, ruling that there is no liability in the case put, are dissected, and it is satisfactorily shown that some of the cases give somewhat equivocal support to the doctrine, which it characterizes as a questionable dogma."

In Burroughs vs. Saterlee, 67 Iowa, 396; 56 Am. Reports 350, the resolution was that, "Where subterranean water flows in a distinct channel, an adjoining owner. has no greater right to divert it than if it were on the surface of the earth."

The rule as to surface water is not in any doubt. "Every proprietor who claims a right either to throw the water back above, or to diminish the quantity which is to descend below, must in order to maintain his claim, either prove an actual grant or license from the proprietors affected by his operations, or must prove an uninterrupted enjoyment for "the time in which the statute of limitations would bar an' action in ejectment."

The petition in the case at bar did not have to negative a grant or license or adverse enjoyment, for that is matter of defense.

A very accurate text writer says: "If underground currents of water flow in clearly-defined channels, the rule of the law which governs the use of similar streams flowing upon the surface is applicable to them. * * *. An action will equally lie for the obstruction or misuse of a subterranean stream or spring or of surface water, after it has become a part of an open stream or spring, and the owner of land has no right to construct his well or other structure in such manner as to create upon his own land an artificial underground current from a running stream. (Gould's Waters, Section 281.)

From such an examination and study as I was able to give the pertinent authorities, I extract this rule, or exception to a rule:

If the proprietor of lands by digging a well, or making any other excavation, on his own lands, with draws water from the spring on the neighboring proprietor's land, which has either percolated into it through the former's land, or flowed into it by well defined and well known subterranean streams or currents,—currents or streams coursing through and under the former's land, and if he does that, not for the purpose of accomodating or benefiting himself or others, but for the purpose of injuring the neighoring proprietor, or, in other words, if in doing it he is actuated by pure and unalloyed malice towards the latter, he is answerable for the damages sustained by his neighbor.

The amended petition shows facts, which bring the case within the application of the exception to the rule, or the rule, which I have thus extracted from the authorities; and it is, therefore, not vulnerable to the demurrer.

Barger, Converse and Powell, for plaintiff; Nash, Lentz & Fritter, for defendant.