William Schwartz, Appellee, v. Emanuel Schwartz, Appellant.

Gen. No. 9,033.

Opinion filed May 15, 1936. Rehearing denied June 20, 1936.

Brown, Fox & Blumberg, of Chicago, and William L. Pierce, for appellant; Charles LeRoy Brown, Jerome F. Dixon, of Chicago, and Clifford E. Fix, of counsel.

Hall & Hulse, of Waukegan, for appellee; Albert L. Hall and Marshall Meyer, of Waukegan, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

This case involves an appeal from a judgment for $50,000, recovered by the appellee against the appellant in an action on the case for an alleged malicious prosecution by the defendant, of a common law action against the plaintiff. The common law action, the basis of the claimed malicious prosecution, was an ordinary cognovit on an unpaid and overdue judgment note of William Schwartz to Emanuel Schwartz for the sum of $15,000. Judgment was confessed for the principal and interest due on this note of William Schwartz and for attorney's fees in the collection of the same. There was no arrest of William Schwartz and no seizure of any of his property. There was no proof of any damage suffered by the defendant in the confession of judgment case. Eight days after the judgment was confessed, the appellee tendered to appellant the full amount of principal of the note and interest due to the date of maturity. The judgment was vacated, the amount tendered accepted by the appellant, the note surrendered by appellant to appellee and the action on the note was dismissed.

The case was tried by a jury and by their verdict they awarded the plaintiff damages to the amount of $150,000. The trial judge found that the verdict of the jury for $150,000 was excessive and required a remittitur of $100,000. An order was entered to this effect. Judgment was then rendered in favor of the plaintiff for $50,000.

William Schwartz, the plaintiff and appellee and Emanuel Schwartz, the defendant and appellant, are brothers. From 1920 to 1929, they were partners in a real estate loan and insurance business in the City of Waukegan, Illinois. In 1929, William Schwartz purchased Emanuel Schwartz's interest in the partnership and paid for the same by turning over to Emanuel numerous real estate mortgages and a series of notes aggregating $119,328. These notes matured on March 1 of each year from 1929 to 1934. Sometime during the year 1930, the brothers had a serious disagreement, and thereafter were not on speaking terms. The notes maturing in 1929, 1930 and 1931 were paid. After the disagreement between the brothers, it was William's custom to mail checks to Emanuel for the sum due on the notes as principal and interest. He did this with respect to the principal and interest payable in 1931, and the interest payable on February 1, 1932. All payments either of interest or principal were sent to the office of Emanuel Schwartz.

In the early part of the year 1932, Emanuel Schwartz had been absent from the City of Waukegan. He returned to his home on March 21, 1932. The note on which suit was brought was due March 1, 1932. William Schwartz went to the office of his brother Emanuel and told the office girl that he was ready to pay the note and interest then due, but he demanded the surrender of the note before payment. The office girl did not have possession of the note and told him that she could not deliver it. William left a letter with

Emanuel's office girl, in which he stated that he had a check ready to pay the note and interest. When Emanuel returned from his trip, he found an accumulation of mail and according to his testimony, he did not receive the letter that his brother, William, had left for him, stating that he was ready to pay the note, until several days after the confession of judgment on the note. The evidence shows that while the brothers were not on speaking terms, they lived in the same house, and slept in the same bedroom and ate at the same table at the home of their father. William did not make any offer or say anything to his brother, Emanuel, with reference to payment of his overdue note. On March 22, Emanuel consulted his lawyer, who advised him to wait a day or two, before he took judgment by confession on the note. On March 24, 1932, the judgment was confessed in the circuit court of Lake county for the principal on the note, unpaid interest and attorney's fees. On April 1, William made a motion to vacate the judgment and stated in open court that on March 1, he had tendered in payment of the note a check for $15,075, at Emanuel's office and that he now retendered that sum in open court. On April 2, the case came up again on the motion to vacate the judgment and at this time William Schwartz again tendered the sum of $15,075, and instead of a check he made the tender in currency. The tender was accepted, the note surrendered and the suit dismissed.

It is seriously insisted by the appellant that the trial court erred in overruling his motion for a directed verdict, at the close of the plaintiff's case. He insists that the suit cannot be maintained.

Both the appellant and appellee have cited numerous cases of our own courts and of other States in support of their different contentions. After examining the cases of our own Supreme and Appellate Courts, it is our conclusion that the law applicable to this case has

been well settled and the decisions of other States need not be considered. The leading case on this subject is *Smith v. Michigan Buggy Co.,* 175 Ill. 619. The court reviews many cases in the opinion and on page 627, they use this language. ''We are of the opinion, and so hold, that an action for the malicious prosecution of a civil suit without probable cause will not lie where the process in the suit so prosecuted is by summons only, and is not accompanied by arrest of the person, or seizure of the property, or other special injury not necessarily resulting in all suits prosecuted to recover for like causes of action.'' The court then cites numerous cases from other jurisdictions.

Both the appellant and appellee cite the case of *Norin v. Scheldt Mfg. Co.,* 297 Ill. 521. In this case the Supreme Court affirmed the judgment and damages for a malicious prosecution. The plaintiff charged that the defendant maliciously and without probable cause filed a petition in the United States District Court, asking that he, the plaintiff, be adjudged a bankrupt. The court on page 525 of their opinion use this language, ''In an ordinary civil suit to recover money damages, whether it be in contract or tort, the business world recognizes that such suit may be filed for any one of many reasons, one of which is that the debtor is unable to pay; while a bankruptcy proceeding is filed on but one basis, and that is that the defendant is a bankrupt. While it is true that the Bankruptcy Act provides that certain acts of the debtor, such as fraudulent concealment or disposition of his property, may be ground for declaring him a bankrupt though solvent, yet the whole basis of the action and the effect of adjudication of bankruptcy is to affect his status by declaring him insolvent and unable to pay. This is not the theory upon which a money judgment is sought in a civil suit. Such steps are taken to force payment, not on the theory that the defendant is unable to pay,

but rather the contrary. A petition in bankruptcy is *sui generis* and is most far-reaching and drastic in its effects. Whether the property of the bankrupt be actually seized or not, no prudent person will buy from him or sell anything to him on credit, because all transactions between the bankrupt and third persons after the petition in bankruptcy has been filed are liable to be investigated, reviewed, set aside or controlled should there be an adjudication of bankruptcy.''

''The principal question involved here is whether or not the action for malicious prosecution will lie in this case. If the same rule is applied to malicious prosecution of an action on an involuntary petition in bankruptcy as obtains in the case of an ordinary civil action the question is no longer open in this State. In *Smith v. Michigan Buggy Co.*, 175 Ill. 619, it was definitely held that an action for the malicious prosecution of a civil suit without probable cause will not lie where the process in the suit so prosecuted is by summons, only, and is not accompanied by the arrest of the person or seizure of the property, or other special injury is sustained not necessarily resulting in all suits prosecuted to recover for like causes of action. This rule was adhered to by this court in *Bonney v. King*, 201 Ill. 47. In the former of these cases the original cause of action upon which the suit for malicious prosecution was based was an action of trespass on the case for damages, while in the second the action was assumpsit.''

In the case of *Shedd v. Patterson*, 302 Ill. 355, relied upon by both appellant and appellee, Shedd had brought suit against Patterson for malicious prosecution and the proof showed that Patterson had brought five suits in equity and four actions at law, relative to the same subject matter, and in each instance Patterson was unsuccessful. The court in their discussion of the law recognized the rule as set forth in the opinion of *Smith v. Michigan Buggy Co.*, *supra*, but held in the

present case that it was a question of fact for the jury to decide whether the instigation by Patterson of nine suits in which he was unsuccessful in all of them, was done with a malicious intent to damage Shedd.

In the case of *Martin v. Summers,* 79 Ill. App. 392, the Appellate Court of the Third District were considering a case wherein a judgment had been entered on a *cognovit* the same as the case that we are now considering. That court held that where a person has authority given him in a power of attorney to confess judgment, he cannot be held liable for the effect of the entry of such judgment merely because his motives were malicious. It is conceded in the case we are considering that the plaintiff and defendant were bitter enemies. The court in the *Martin* case in discussing what bearing malice has on the merits of the action use this language: ''The appellant further contends that even if the appellees had the right to procure the judgment as they did on July 26, 1897, yet inasmuch as the declaration shows that the appellees, in doing so then, were actuated by malice toward the appellant, and that the effect was to injure and damage the appellant, and he was injured and damaged thereby, then the appellees are liable on that account.

''We think, however, that law and justice require us to hold that the appellees, having the legal authority expressly given them by the appellant, in the power of attorney, to have the judgment entered when it was entered, can not be held by the appellant liable to the effect of the entry of such judgment, merely because the motives prompting them to do so were malicious; for the courts will not inquire into the motives actuating a person in the performance of a legal right. *Phelps v. Nowlen,* 72 N. Y. 39. Judge Cooley, in his admirable work on 'Torts,' on page 699, says that 'the exercise by one man of his legal right can not be a legal wrong to another. . . . Any transaction which

would be lawful and proper if the parties were friends, cannot be made the foundation of an action merely because they happen to be enemies. As long as a man keeps himself within the law, by doing no act which violates it, we must leave his motives to Him who searches the heart. To state the point in a few words, whatever one has a right to do, another can have no right to complain of.'

"Again at page 690, he says: 'Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they can not make that a wrong which in its essence is lawful. When in legal pleadings the defendant is charged with having wrongfully and unlawfully done the act complained of, the words are only words of vituperation, and amount to nothing unless a cause of action is otherwise alleged.' "

The case of *Stevick v. Vennum*, 227 Ill. App. 86, was a suit for malicious prosecution in which the plaintiff alleged that the defendant had maliciously instituted an involuntary bankruptcy proceeding against the plaintiff when he was solvent and for that reason he had been greatly damaged. The court in this case held that there was a distinction between starting a civil suit for the recovery of money and filing a petition charging the person with bankruptcy and held that the suit could be maintained. In the case of *Dooley v. Meisenbach*, 83 Ill. App. 75, the court held that in an action for malicious prosecution where the plaintiff was not arrested or any of his property seized in the prosecutions complained of and, it does not appear that he suffered any special damages on account of such prosecutions, beyond the expense and trouble attended upon the suits, he can not recover, and they cite the case of *Potts v. Imlay*, 4 N. J. L. 377. In this case the court after reviewing numerous cases from other jurisdictions and their own State courts, on page 381, of their opinion use this language: "Upon the

whole, upon the strength of these authorities, I think it may be laid down as law, that this action cannot be maintained for prosecuting a civil suit in a court of common law having competent jurisdiction, by the party himself in interest, unless the defendant has upon such prosecution been arrested without cause and deprived of his liberty, or made to suffer other special grievances different from, and superadded to, the ordinary expense of a defense.''

From a review of the evidence, it is our conclusion that the appellee has not shown that he has suffered any damages aside from the inconvenience of defending the suit to have the judgment vacated and set aside. According to the authorities of the State of Illinois, the suit cannot be maintained and the court erred in not directing a verdict for the defendant.

The judgment of the circuit court of Lake county is hereby reversed.

*Reversed.*