## LOUISVILLE & NASHVILLE RAILROAD COMPANY v. R. W. VINCENT, Administrator.

### (*Nashville.*   December Term, 1905.)

1.  **REMOVAL OF CAUSES. Not by a nonresident defendant joined with resident defendants in a joint and concurrent action shown by the declaration; such action defined.**

    Where in a resident's suit against residents and a nonresident in a State court, it appears from the declaration that the cause of action is joint and concurrent against all the defendants and that there is no separable controversy with the nonresident defendant, independent of the other defendants, the nonresident defendant is not entitled to a removal of the cause to the federal court.   What constitutes such joint and concurrent actions for torts as well as separable controversies is defined and illustrated.   (*Post, pp.* 321, 322, 330-332, 337-339.)

    Cases cited and approved: Railroad v. Kenley, 92 Tenn., 207; Beopple v. Railroad, 104 Tenn., 428; Coleman v. Bennett, 111 Tenn., 712.

2.  **SAME. Same. Purpose of joinder to prevent the removal is immaterial where the cause of action is joint.**

    It is immaterial in such case, where the cause of action appears to be joint and concurrent against all the defendants, that the plaintiff joined the resident defendants for the purpose of avoiding the jurisdiction of the federal court and for the purpose of preventing a removal of the cause to that court.   (*Post, pp.* 322-339.)

    Cases cited and approved: Macey v. Childress, 2 Tenn. Chy., 442; Railroad v. Hendricks, 88 Tenn., 710; Terminal Co. v. Railroad, 119 Fed., 210; Railroad v. Dixon, 179 U. S., 135, 140, 47 S. W., 615; Mining Co. v. Canal Co., 118 U. S., 264, 270; Connell v. Railroad (C. C.), 13 Fed., 241; Schumpert v. Railroad (S. C.), 43 S. E., 813; Phelps v. Nowlen, 72 N. Y., 39; Kiff v. Youmans, 86 N. Y., 329; Goff v. Railroad (C. C.), 36 Fed., 301;

Railroad v. Vincent.

Warax v. Railroad (C. C.), 72 Fed., 638; Hukill v. Railroad (C. C.), 72 Fed., 745; Railroad v. Wangelin, 132 U. S., 599; Charman v. Railroad (C. C.), 105 Fed., 449; Diday v. Railroad (C. C.), 107 Fed., 565; Little v. Giles, 118 U. S., 596; Simpson v. Dall, 70 U. S., 460; Railroad v. Thompson, 200 U. S., 206.

3. **VERDICTS.** No evidence to support verdict for wrongful death where no negligence is proved against railroad conductor and engineer, when.

There is no evidence to sustain the verdict of the jury in favor of the plaintiff in an action for the wrongful death of plaintiff's intestate while employed and engaged in learning the business of a railroad brakeman, where there is no evidence to charge the conductor and engineer with negligence in starting the train without first ascertaining that the deceased was not between the cars, where he had been expressly warned and directed not to go. (*Post, pp.* 339-351.)

4. **RAILROADS.** Brakeman and a learner of the business of a brakeman are fellow servants.

A railroad brakeman and one engaged in learning the business of a railroad brakeman are fellow servants, and the railroad is not liable in damages for the death of the learner through the negligence of the brakeman in signaling the engineer to proceed while the learner was between the cars coupling the air hose. (*Post, p.* 345.)

Case cited and approved: Citizens' Rapid Transit Co. v. Dozier, 110 Tenn., 98.

5. **SAME.** Conductor in charge of a freight train is a vice principal as to the other trainmen.

A conductor in charge of a freight train stands in the relation of a vice principal to the other members of the crew, and the railroad company is liable for any act of negligence on his part, whereby an injury is inflicted upon any of the trainmen. (*Post, p.* 345.)

Cases cited and approved: Railroad v. Spence, 93 Tenn., 173; Railroad v. Dillard, 114 Tenn., 240.

Railroad v. Vincent.

6. **Same. Rules for government of employees required, but not special rules for beginners.**

While a railroad company is in duty bound to adopt and promulgate a code of rules for the government of its employees and to enforce their obedience, but it is not absolutely required to adopt and promulgate a code of rules for inducting beginners or learners into its service. (*Post, pp.* 351-354.)

Case cited and approved: Railroad v. Reagan, 96 Tenn., 139.

7. **SAME. MASTER AND SERVANT. Instruction and advice for youthful and inexperienced employees.**

It is the master's duty to give such warning, advice, and instruction to a youthful and inexperienced employee as will enable him by the exercise of reasonable care to perform the duties of his employment with safety to himself. (*Post, p.* 352.)

Case cited and approved: Whitelaw v. Railroad, 16 Lea, 397.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County.— JOHN W. CHILDRESS, Judge..

SMITH & MADDIN and JOHN BELL KEEBLE, for Railroad.

W. H. WASHINGTON and WIRT HUGHES, for Vincent.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff below, as administrator of his minor son, Joseph Vincent, recovered a verdict and judgment in the

circuit court of Davidson county against the plaintiffs in error for the sum of $4,000, as damages for the alleged negligent killing of the deceased. John C. Hayes, the engineer of the corporate defendant, was also sued, but the jury returned a verdict in his favor. The railroad company and Edward L. Schubert appealed, and have assigned errors.

The declaration contains three counts, and in the first count charges that the deceased Joseph Vincent had been employed by the defendant company in the capacity of a cub or as a learner, and that at the time of his employment he was wholly inexperienced and ignorant touching his duties. It is then alleged that the company was guilty of negligence in failing to provide suitable and proper rules for instructing cubs, and for inducting them into its services, and in employing incompetent servants, as well as in maintaining a defective track at the point of the injury.

It then alleges that the railroad company delegated to the conductor and engineer and train crew the duties it owed the deceased of instruction and protection from danger. It further alleges that all of the defendants were guilty of negligence in failing to instruct and warn the deceased, as ordinary care required, and negligently ordered him to make a coupling at a point over a defective track, and that while the deceased was in between the cars, the defendant negligently caused the train to run over and kill him, and that all these acts of negligence combined to cause his death, and that his death

Railroad v. Vincent.

was due to the joint, combined, and concurrent negligence of all of the defendants.

(2) It is alleged in the second count that the conductor ordered the deceased to make the coupling at a defective and dangerous place in the track, and that while there, the conductor and engineer negligently moved the train and killed him; that all of said acts of negligence joined to cause his death, and that his death was due to the joint negligence of all the defendants.

(3) It is charged in the third count that deceased was a cub and learner, as set out in the first and second counts of the declaration, and charges that the defendants negligently failed to warn deceased the train would move, and negligently failed to warn the engineer that deceased had not come out and that the engineer negligently moved the train before deceased came out. And that said acts of negligence jointly contributed to and caused the death of deceased, and that his death was the result of the joint negligence of all the defendants. This is a condensed statement of the action as laid in the several counts of the declaration.

A preliminary question arises on the record which must be considered before entering upon an investigation of the remaining assignments of error, viz.: The right of removal of the defendant railroad company.

It appears from the wayside bill of exceptions that on the 20th of November, 1903, the defendant railroad

company filed a petition to remove the cause to the
United States circuit court. The proper allegations were
made in respect of citizenship, the amount involved, and
the further averment that the allegations of joint neg-
ligence contained in the declaration did not, as a matter
of law, state a case of joint negligence.

It was further averred in the petition that the declara-
tion alleged a separate and separable controversy with
the railway company alone, in that it averred that de-
ceased was placed to work upon a defective, unballasted
track, full of holes and uneven, which exposed him to
unusual dangers. It was not alleged therein that it was
any part of Schubert's or Hayes' duty to ballast the
track or keep it in good condition, but this was wholly
the duty of the petitioner, and therefore this was a con-
troversy solely between plaintiff and petitioner.

The petition further averred that Schubert and Hayes
were fraudulently joined for the sole purpose of de-
feating the jurisdiction of the United States circuit
court, and of fraudulently preventing petitioner from
removing the cause to the United States circuit court;
that Hayes and Schubert were men of reasonably mod-
erate means, unable to pay any such sum as was sued
for — $30,000. Petitioner was solvent, and good for
any sum that might be awarded.

An answer was filed to this petition by the plaintiffs
below, denying that Schubert and Hayes were fraudu-
lently joined as defendants, or for any illegal or im-
proper purpose; that plaintiff joined them because the

Railroad v. Vincent.

law gave him the right to sue all who were guilty of joint and concurrent negligence in causing the death of the deceased, and stating that Schubert and Hayes earned from $1,800 to $2,500 a year.

The circuit court, upon a consideration of the petition and answer, declined to allow the removal of the suit.

It further appears that upon the close of the argument of counsel, and after the defendant's evidence had been heard, but before the court had charged the jury, the defendant railroad company filed another petition to remove the cause to the United States circuit court. That petition was in due form and embodied the usual statutory requirements, and was duly verified. It also referred to the original petition for the right of removal and readopted and reaffirmed the allegations contained therein.

In addition to these averments, it was charged in the petition that counsel for plaintiff, in his concluding address to the jury, made use of the following language, viz.: "It is proper that I should state to you why we joined the defendants Hayes and Schubert in this suit. We did not expect Mr. Hayes or Mr. Schubert to pay this judgment, or much of it, any way. They have not much means. I do not care what becomes of Hayes. You may find a verdict in his favor. We simply joined these people to prevent the removal of this case to the federal court and to keep it in a Tennessee court and before a Tennessee jury. But when you come to con-

sider the case, don't turn Schubert loose just out of sympathy for him, because the minute you do the defendant company will file a petition to remove this case to the United States circuit court."

The petition then charges that said Schubert and Hayes were fraudulently joined for the sole purpose of preventing the removal of this case to the federal court, as evidenced by the above statement of the plaintiff, through his counsel.

It is further averred in the petition that on the trial of the case, the allegations in the declaration charging concurrent and joint negligence were not sustained by the proof, and there was no proof made in the case under which any judgemnt could be properly rendered against either Mr. Hayes or Mr. Schubert, and there was not any proof under which any joint judgment could be rendered against either Mr. Hayes or Mr. Schubert, and there was not any proof under which any joint judgment could be rendered against any two or more of the defendants, and no proof of joint or concurrent negligence.

It was further averred that plaintiff's counsel had admitted in open court that there was no proof of negligence under which Mr. Hayes would be held or under which any verdict would be rendered against him. The petitioner further states that this petition to remove the cause was filed after the argument of counsel and before the court charged the jury, it being filed as the next step in the cause after said argument was made by plaintiff's counsel.

The court overruled the prayer of the petition for a

removal of the cause, to which action counsel for the railroad company excepted, and filed a bill of exceptions.

The action of the trial judge in overruling the application for the removal of the cause is assigned as error, for the following reasons, viz.:

(1) Because the allegations of the declaration did not state a joint cause of action.

(2) Because the case contained a separate and separable controversy solely between the plaintiff and the railroad company.

(3) Because the petition to remove alleged that the local defendants were fraudulently joined solely to prevent the removal of the case to the United States circuit court.

We will first notice the question of fraudulent joinder.

It is insisted that upon the allegations of the petition, it was the duty of the court of primary jurisdiction to order the removal to the United States circuit court and let that court try the question of fraudulent joinder. It is said that it was not within the jurisdiction of the state court to determine or try this question.

In *Union Terminal Ry.* v. *C., B. & Q. R. R.* (C. C.), 119 Fed., 210, the plaintiff sued the Chicago, Burlington & Quincy Railroad, a non-resident, and a local defendant, the Council Bluffs Railway, alleging joint and concurrent negligence. The Chicago, Burlington & Quincy Railroad filed a petition to remove on the ground of fraudulent joinder for the sole purpose of defeating re-

moval. The cause was removed, and on motion to remand, the United States circuit court said: "It is a settled rule of procedure that where the petition alleges a joint cause of action against a resident and a non-resident, defendant, the cause is not removable, although it is averred in the petition for removal that the resident defendant has no interest in the controversy, or that the cause of action is not joint. Nor is it sufficient that the answer of defendants raise a separable controversy or show that one of the defendants was not liable, but the rule is qualified by the proviso that the defendant moving for a removal may allege and prove to the satisfaction of the court that the local defendant was joined in the action for the fraudulent purpose of preventing a removal by the non-resident defendant."

In Desty's Fed. Procedure (9th Ed.), pp. 478, 479, it is said: "In order that joinder of defendants be regarded as fraudulently made for the purpose of avoiding the jurisdiction of the federal court, it must appear by allegation and proof, not only that it was made for that purpose, but also that the averments upon which the right to join such defendants is claimed is so unfounded in fact or incapable of proof as to justify the inference that they were not made in good faith, or with the intention of proving them." Dillon on Removal of Causes, sec. 43.

The declaration alleges that: "Said negligence of the corporate defendant was done by and through its said servants (to wit, the conductor and engineer) and other

of its servants then and there in its employment, and said negligence was the joint negligence of all the defendants. And the said injuries and death of plaintiff's intestate were the direct and proximate result of the combined, joint, and concurrent negligence of the corporate defendant . . . and its codefendants . . . and other of its servants, agents, and officers then in its service."

It will thus be observed that the plaintiff in his original pleadings has seen fit to proceed against all the defendants jointly, although he might have proceeded against each severally. The authorities are to the effect that although the defendants may have each distinct defenses, this will not change the character of the action which must be determined from the face of the pleadings. One of the latest decisions on this subject is that of *Railroad Co.* v. *Dixon,* 179 U. S., 140, 21 Sup. Ct., 67, 45 L. Ed., 121. In that case, a train of defendant killed plaintiff's husband and intestate, and the conductor and engineer were joined in the suit with the railroad company as codefendants in the court below. The railroad company made an application to remove the case to the United States circuit court, because it was a nonresident of the State of Kentucky, where the suit was brought. The company filed the usual petition to remove, alleging that the suit was wholly between citizens of different States, etc., and the conductor and engineer were joined as defendants for the sole and single purpose to prevent a removal, and that they were

neither necessary nor proper parties. The State court overruled the application to remove, and the plaintiff afterwards having recovered a verdict, the case was appealed to the State court of appeals (47 S. W., 615), where it was affirmed, and afterwards by writ of error, removed to the supreme court of the United States.

Fuller, C. J., said: "The question to be determined is whether the court of appeals of Kentucky erred in affirming the action of the Boyd circuit court, in denying the application to remove. And that depends on whether a separable controversy appeared on the face of plaintiff's petition or declaration. If the liability of defendants, as set forth in that pleading, was joint, and the cause of action entire, then the controversy was not separable as matter of law, and the plaintiff's purpose in joining Chalkey and Sidles (the conductor and engineer) was immaterial."

In referring to the declaration, the court further said:

"It was stated that the 'negligence of the corporate defendant was done by and through its said servants and other of its servants then and in its employment, and the said negligence was the joint negligence of all the defendants.' Assuming this averment to be inconsistent with a charge of direct action by the company, it may, nevertheless, be held to amount to a charge of concurrent action when coupled with the previous averment that Dixon was killed, while crossing the track at a turnpike crossing, by the negligence of the company, and the other defendants in charge of the train. The

Railroad v. Vincent.

negligence may have consisted in that the train was run at too great speed and in that proper signals of its approach were not given; and if the speed was permitted by the company's rules, or not forbidden, though dangerous, the negligence in that particular and in the omission of signals would be concurrent. Other grounds of concurrent negligence may be imagined. And where concurrent negligence is charged, the controversy is not separable."

Fuller, C. J., in the opinion, says further: "*Plymouth Gold Mining Co.* v. *Amador & S. Canal Co.,* 118 U. S., 264, 6 Sup. Ct., 1034, 30 L. Ed., 232, and *Connell* v. *Utica, N. & E. R. Co.* (C. C.), 13 Fed., 241, are more in point on the precise question sought to be raised; and in the latter case, Mr. Justice Blatchford expressed the opinion that it was proper for the federal courts to follow the decisions of the State courts, that a cause of action was entire."

Learned counsel for the plaintiff below makes the following application of the *Dixon Case,* which we think entirely sound, viz.:

"In the case at bar, the declaration charges that the acts of negligence causing the death of young Vincent were concurrent. As in regard to the rule allowing dangerous speed in the *Dixon Case,* that negligence being the negligence of the company, so in the case at bar, the negligence in failing to adopt reasonable rules instructing 'cubs' and inducting them into the service, and the negligence in allowing the track to remain unballasted,

where it was to be used by the brakeman, was the negligence of the company. In the case at bar, it is charged that these acts of negligence were concurrent with the negligence of the conductor in sending Vincent to make the dangerous coupling at the place, in not giving him time to make it, and in causing the train to move, and moving the train before he came out. These acts of negligence concurred with the acts of negligence of the conductor and engineer, and other of its servants, then and there in the employment of the corporate defendant, to bring about the injury."

The question of joint torts was fully considered in the case of *Beopple* v. *Railroad,* 104 Tenn., 428, 58 S. W., 231, and therein the court says: "Instances where the wrongful acts of two or more persons concur as proximate causes of an injury, the wrongdoers are liable jointly or separately, and the fault of one is no defense for the other or others."

This case is cited in *Coleman* v. *Bennett,* 111 Tenn., 712, 69 S. W., 734, wherein the court says: "If the damage has resulted directly from the concurrent wrongful acts or neglects of two persons, each of these acts may be counted on as the wrongful cause, and the parties held responsible, either jointly or severally, for the injury. Cooley on Torts, 78, 79. If the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other

contributed to the injury." 1 Thomp. on Neg., section
75.

An illustration of joint and concurrent negligence
may be found in the case of *Railroad* v. *Kenley,* 92 Tenn.,
207, 21 S. W., 326, wherein it was alleged the company
was negligent in maintaining a defective foot rest on the
car and the engineer was negligent in jamming the train.
The court said: "There was evidence tending to show
that at the moment Kenley put his foot upon the defec-
tive foot rest to ascend to the top of the train, there was
a sudden jamming of the cars together, and that the in-
jury was brought about by the concurrent negligence of
the engineer in causing the jam, and on the company
through the defective foot rest . . . 'If the negligence
of the master combines with the negligence of a fellow
servant, and the two contribute to the injury, the ser-
vant injured may recover damages of the master.'" And
the court might have added that liability also might be
enforced against the engineer for his concurrent act of
negligence. 2 Labatt on Master & Servant, section 649.

In 1 Sutherland on Damages, section 140, the learned
author thus states the law:

"Where a master is liable for the tort of his servant,
a principal for that of his agent or deputy, they are
jointly liable."

In *Schumpert* v. *Southern Railway Co. et al.* (S. C.),
March, 1903), 43 S. E., 813, which was a case of collid-
ing trains, wherein the engineer of one train sued the
company and Hutchison, the engineer of the other train,

in the same action, the declaration charged that the injury was due to the negligence of the company in having defective air brakes on the train opposing Hutchison's train, and was also due to the negligence of Hutchison in not remaining on a siding and in running on the main line upon the time of the train upon which plaintiff was engineer. And the declaration alleged that the injury to plaintiff was the result of the joint and concurrent negligence of the defendants.

The court said:

"The servant is liable because of his own misfeasance, or wrongful act, in breach of his duty to so use that which he controlled as not to injure another. The master is liable because he acts by his servant, and is therefore bound to see that no one suffers legal injury through the servant's wrongful act done in the master's service within the scope of the agency.

"Both are liable jointly because from the relation of master and servant, they are united or identified in the same tortious act resulting in the same injury."

It is urged, however, that counsel for the plaintiff below, in his closing address to the jury, frankly admitted that the conductor and engineer had been made parties defendant with the railroad company for the express purpose of avoiding a removal and defeating the jurisdiction of the United States circuit court. If, however, the plaintiff in his declaration and proof made out a prima facie case of joint and concurrent liability on the

Railroad v. Vincent.

part of all the defendants, his motive in joining them is wholly immaterial.

In he case of *Macey* v. *Childress,* 2 Tenn. Ch., 442, Judge Cooper stated the law on this subject as follows: "It is no defense to a legal demand instituted in the mode prescribed by the law that the plaintiff is actuated by personal or improper motives. The motives of a suitor cannot be inquired into in such a case. Were it otherwise, nearly every suit would degenerate into a wrangle over motives and feelings."

In *Phelps* v. *Nowlen,* 72 N. Y., 39, 28 Am. Rep., 93, it is said: "The courts may not inquire into the motives actuating a person in the enforcement of a legal right." In *Kiff* v. *Youmans,* 86 N. Y., 329, 40 Am. Rep., 543, it is said: "The exercise of a legal right cannot be affected by the motive that controls it."

In *Goff's Adm'r* v. *Norfolk R. R. Co.* (C. C.), 36 Fed., 301, the court said: "The reasons and motives actuating the real beneficiaries and administrator in bringing suit in this court are immaterial."

In *Warax* v. *C., N. O. & T. R. R. Co.* (C. C.), 72 Fed., 638, Judge Taft, delivering the opinion of the court said: "Plaintiff's petition seeks to hold the railroad company and Snyder, as engineer, as joint tortfeasors. If, on the statement in the petition, he is able to do so, then the cause is not removable unless it be made to appear to the satisfaction of the court that one of the defendants was fraudulently joined for the purpose of defeating the jurisdiction of the federal court. In order that such

joinder should be regarded as fraudulent, it must appear by allegation and proof not only that it was made for the purpose of avoiding the jurisdiction of the federal court, but also that the averments of the declaration upon which the right to join the defendants is claimed, are so unfounded and incapable of proof as to justify the inference that they were not made in good faith with the hope and intention of proving them, or else that they do not state a joint cause of action. No proof is offered in this case except the fact that suit was once brought on the same cause of action against the railroad company without joining Snyder, the engineer. This may be regarded as a circumstance tending to show that the purpose of joining Snyder was to avoid the jurisdiction of the federal court; but it does not show, or have any tendency to show that the averments of the declaration with respect to Snyder, upon which the right to join Snyder is asserted, were unfounded in fact. One who has a real cause of action for a joint tort against two persons cannot be deprived of the right to bring his action against both and to retain both in the case, and to have the case heard with both as defendants, merely because he joined them for the purpose of avoiding the jurisdiction of the federal court. If the right exists, the motive of its exercise cannot defeat it."

So in *Hukill* v. *Railroad,* (C. C.), 72 Fed., 745, it was said: "If a plaintiff has a good cause of action for a joint tort against several defendants, it is not fraudulent in him to join them all in his suit, even if it does appear

Railroad v. Vincent.

that he would not have joined the resident defendants with the nonresident defendants except for the purpose of avoiding the jurisdiction of the federal court. Where he has reasonable ground for a bona fide belief in the facts upon which the defendants depend, his motives in joining them cannot be questioned." *L. & N. R. R. Co.* v. *Wangelin,* 132 U. S., 599, 10 Sup. Ct., 203, 33 L. Ed., 473; *Charman* v. *Railroad Co.* (C. C.), 105, Fed., 449; *Diday* v. *Railroad Co.* (C. C.), 107 Fed., 565; *Plymouth Gold Mine Co.* v. *Amador, etc.,* 118 U. S., 270, 6 Sup. Ct., 1034, 30 L. Ed., 232; *Little* v. *Giles,* 118 U. S., 596, 7 Sup. Ct., 32, 30 L. Ed., 269; *Simpson* v. *Dall,* 70 U. S., 460, 18 L. Ed., 265; *C. & O. R. R.* v. *Dixon,* 179 U. S., 135, 21 Sup. Ct., 67, 45 L. Ed., 121; 18 Encyc. of Pl. & Pr., 202, and notes.

It will be observed, moreover, that counsel in his remarks touching the purpose for which the engineer and conductor were made defendants to the present action, did not state or admit they were not liable personally, concurrently and jointly with the railroad company for the wrong and injury inflicted. On the contrary, counsel stated that on account of the insolvency of the resident defendants that little satisfaction could be expected of any judgment that he might recover; and that as to the defendant Hayes, he was willing that a verdict might be returned by the jury in his favor; but he protested against the release of Schubert, the conductor, on account of any sympathy the jury might have for him; since, in his opinion, the effect of such action would

cause a removal of the case to the United States circuit court.

In our opinion, the first petition was properly over-ruled by the court for the reason that the declaration stated a *prima facie* case of joint and concurrent liability against all the defendants, and no countervailing proof was presented by affidavit or otherwise, as required by the federal practice; nor was the company entitled to a removal under the second petition because the admissions of counsel do not show a fraudulent joinder.

We are further of opinion that no separable controversy with the nonresident defendant, independent of the other defendants, is presented in the pleadings.

In *Railway Co.* v. *Hendricks,* 88 Tenn., 710, 13 S. W., 696, 14 S. W., 488, it is said: "Whether a separable controversy exists such as entitles a nonresident sued jointly with a resident in a State court to a removal of the cause to the federal court must be determined solely from the face of the record in the said court as it appears at the time of the filing of the petition for removal without any aid from averments of the petition or affidavit, unless the petitioner both alleges and proves that his joinder with a resident defendant was wrongful, and done for the fraudulent purpose of preventing such removal."

In 2 Foster's Fed. Practice (3d Ed.), at page 924, it is said: "For the purpose of determining whether a controversy is separable, the allegations in the bill or declaration must be taken as true. A controversy is not sep-

Railroad v. Vincent.

arable when a defendant who would otherwise be entitled to remove the suit is charged as jointly liable with another defendant who is a fellow citizen with the plaintiff. Such a case cannot be removed by a defendant whose citizenship is different from that of the plaintiff, even if the alleged cause of action is both joint and several, whether in tort or contract if the plaintiff has sued the defendant jointly, although a State statute permits judgment to be rendered for or against one or more of the plaintiffs, and for or against one or more of the defendants. Where the plaintiff has sued a master and servant, or a corporation and its receiver jointly for the same tort, there is no separable controversy."

It may be remarked that the controversy in the present case is the death of the plaintiff's intestate, and the declaration alleges that his death was brought about by the concurrent action of all the defendants; whether one or all may be responsible for the death is to be determined, of course, by the proof; but the plaintiff is entitled to have his controversy presented in his declaration passed on by the jury; and until it has been so determined, it is waged against all of the defendants jointly.

Since this opinion was prepared, the United States supreme court decided the case of *Alabama Great Southern Railway* v. *H. C. Thompson, Adm'r of Florence James, Deceased,* 200 U. S., 206, 26 Sup. Ct., 161, 50 L. Ed.—, in an opinion delivered by Mr. Justice Day, which

116 Tenn.—22

fully sustains our conclusions herein. The plaintiff was a citizen of Tennessee. The defendants were the Alabama Great Southern Railway Company, a corporation organized under the laws of Alabama, and William H. Mills and Edgar Fuller, both citizens of the State of Tennessee. The cause was then removed into the United States circuit court upon the ground that a separable controversy existed between the petitioner and the plaintiff as to which diversity of citizenship existed which could be tried without the presence of either of the individual codefendants of petitioner (the railroad). A motion to remand to the State court because no removable separable controversy appeared was overruled.

In that cause the declaration substantially averred that the intestate of the plaintiff while in the exercise of due care had been negligently, wrongfully, and carelessly run over while upon the track of the railroad company, by an engine and train of cars, owned and operated by the railroad company, which said train was at the time under the management and control of the individual William H. Mills as conductor and Edgar Fuller as engineer.

The court held that a case in which plaintiff in good faith has elected to sue jointly in tort a foreign corporation and its servants whose misconduct caused the injury complained of, does not — even if such joinder may be improper — present a separable controversy between plaintiff and the corporation which can be removed from a State to a federal circuit court without regard to the

citizenship of the individual defendants.  If he has improperly joined causes of action, he may fail in his suit; the question may be raised by answer, and the right of the defendant adjudicated.  But the question of removability depends upon the state of the pleadings and the record at the time of the application for removal, and it has been too frequently decided to be now questioned that the plaintiff may elect his own method of attack and the case which he makes in his declaration, bill, or complaint, that being the only pleading in the case, is to determine the separable character of the controversy for the purpose of deciding the right of removal.

So that, in our opinion, both the original and renewal petitions for removal were properly dismissed by the trial judge.

The next assignment of error we shall consider is that there is no evidence to sustain the verdict and judgment below.

The record reveals that the deceased, Joe Vincent, at the time of his death was in the twenty-first year of his age.  It appears that almost from childhood he had been working and. earning his own livelihood.  At one time he had been working in a butcher shop and for four months was a conductor on an electric street car.  Immediately prior to his last employment by the defendant company, he had been engaged for twelve months as a caller in the terminal yards at Nashville.  His occupation required his presence in the yard about half the night and half the day.  According to the testimony of

the yardmaster, he was an unusually active, bright, and intelligent boy.  While thus occupied, he made application for the position of brakeman on a freight train, representing himself to be twenty-one years of age, since the rules of the company forbade the employment of any trainmen under that age.  The deceased was accordingly employed and placed in charge of the conductor on a local freight train between Decatur, Alabama, and Nashville, Tennessee, to learn the duties of his employment.  He was to receive $1 per day as a cub, working sixteen days a month, while as a regular brakeman he would receive $60 per month.

The train crew with whom he was associated consisted of Edward L. Schubert, conductor, John C. Hayes, engineer; Thompson, fireman, with Webster, White, and Ezell as brakemen.  It appeared that deceased made two round trips from Nashville to Decatur, and then a third trip to Decatur.  The accident resulting in the death of the deceased occurred on a siding of the railroad company at a small station south of Franklin, Tennessee, on his return trip from Decatur to Nashville.  At that point his freight train had orders to take up five empty coal cars standing on a siding east of the main track near Perry's siding.  All these cars were provided with appliances for air brakes, each having a rubber hose at each end which when coupled connected the air for the air brake.  The air hose in these empty cars had been uncoupled.  Three of these coal cars were coupled together with the automatic brake and stood several car lengths

north of the two remaining cars. The engine and three-freight cars were then detached from the train on the main track and moved north for the purpose of backing into the side track to take up the five empty coal cars. The first three cars standing on the siding were then coupled by Schubert, the conductor, to the three cars already attached to the engine. The engine and six cars were then backed southwardly several car lengths toward the remaining two cars standing on the side track. White, one of the trainmen, then coupled on these two cars and signaled the engineer to move ahead, all the five cars being then coupled to the train. Schubert, the conductor, repeated White's signal, and the fireman repeated it to the engineer, who immediately moved the train. When the cars had moved a short distance, probably thirty or forty feet, Schubert, the conductor, was attracted by a voice of distress on the other side of he cars, and immediately signaled the train to stop. He at once crossed over between two of the cars and found the deceased, Joe Vincent, lying near the track, badly injured. White, the brakeman, reached the deceased almost immediately, and in three or four minutes he was joined by Hayes, the engineer. When the trainmen reached the deceased and asked him how he got hurt, he stated that he was trying to couple the air hose and told White to hold the train until he came out. It is due the brakeman White to say that he testified on the trial that he did not hear the remark of deceased, and was not aware he was at the coupling.

This evidence was excepted to by counsel for the defendants, but was admitted and is made the basis of an assignment of error. The deceased also stated to Ezell, a witness for defendant, that he was trying to couple the air hose. It is admitted that the conductor gave the signal to move the train while the deceased was completing the coupling, and that the train moved before the deceased could get out, thus inflicting the injury.

There is proof tending to show that when the trainmen were making these couplings all the crew were on the west side of the cars, and were on the inside of the curve in the track between the main track and side track, and there is proof tending to show that on this account neither Schubert nor any of the trainmen were aware of the presence of the deceased beneath the car making the coupling of the air hose. On the other hand, it is insisted on behalf of the defendants in error that the deceased was assisting Schubert in making the coupling and that there is also evidence tending to show that the deceased was at White's coupling, and this seems to be the contention made on behalf of the plaintiffs below. The insistence is that deceased must have been at one or the other of the two couplings, and if he was at either, he was under the eyes of the conductor and brakeman. It was also claimed on behalf of plaintiff below that before the coupling was made the deceased and the conductor got out of the caboose together and that during the entire time consumed in making these couplings, they were close together.

It is further insisted that the conductor, by the exercise of the slightest diligence on his part, could have ascertained that the coupling was not completed, and that the negligence of the conductor in signaling the train forward under such circumstances establishes a case of liability against the company.

It is contended on behalf of the company that it was not customary to couple the air hose on the siding, and, hence, after the automatic brake was coupled, the conductor could not have anticipated that deceased was near the train making a coupling of the air hose. It appears, however, from testimony adduced on behalf of the plaintiff below that it was usual and customary to complete the coupling, including the adjustment of the air hose on the siding, before going upon the main track. It is admitted by the brakeman, White, that he did not adjust the air hose at his coupling, and plaintiff insists that that part of the coupling had been left by White and Schubert to Joe Vincent, the deceased.

There is ample evidence in the record to have warranted the jury in finding that it was the custom of defendant company to couple the air hose on the side track without waiting for the train to be finally made up on the main track; hence, this controverted question of fact is settled by the verdict of the jury in favor of the plaintiff below. Now, as already stated, the specific negligence laid at the door of the conductor was in not waiting a sufficient length of time for the coupling to be completed, and in signaling the fireman to move the train be-

fore the deceased had emerged from the car. It does not appear from this record that any witness saw the deceased go between the cars, or that any train man knew that he was trying to couple the air hose. This fact, however, is sought to be established by his *post factum* declaration, and by certain circumstances which fix knowledge of this fact both upon White, the brakeman, and Schubert, the conductor.

Pretermitting, for the present, the declarations of deceased to the effect that at the time of the injury he was trying to couple the air hose, we shall advert to the circumstances which, it is claimed, charge the conductor with knowledge of the perilous position of deceased.

It appears from the testimony of one Ezell that deceased was hurt three car lengths north of the point where White made the second coupling. Schubert, the conductor, stated that deceased was found immediately after the accident "right near the north end of the second car from the rear end," which, according to plaintiff's contention, would place deceased immediately at White's coupling. White, it appears, was at the north end of the second car on the siding, and turned the knuckle of the automatic brake and made the coupling. He, however, states he did not couple the air hose. It is argued that deceased must have been with White when he made this coupling, for deceased was found under the first of the two cars that White coupled. But we are unable to perceive how these facts fix knowledge on the conductor of the presence of deceased under the car;

their only tendency is to show that White, the brakeman, had such knowledge and was guilty of gross negligence in signaling the conductor that the coupling had been made. But it must be conceded that, upon the authority of *Citizens' Rapid Transit Co.* v. *Dozier,* 110 Tenn., 98, 72 S. W., 963, the deceased as a learner and the brakeman, White, were fellow servants, and there can be no recovery for the negligence of the latter.

It is conceded on the record that Schubert, the conductor, at the time White made the second coupling, was standing at least three car lengths north, and there is proof tending to show that his view of one on the opposite side of the train engaged in an effort to couple the air hose, would be obstructed both by the high sides of the gondola cars, and by the trucks and running gear underneath. It is, of course, conceded that the conductor in charge of a freight train stands in the relation of a vice principal to the other members of the crew, and the company is liable for any act of negligence on his part whereby an injury is inflicted upon any of the trainmen. *Railroad* v. *Dillard,* 114 Tenn., 240, 86 S. W., 313; *Ill. Central R. R.* v. *Spence,* 93 Tenn., 173, 23 S. W., 211, 42 Am. St. Rep., 907.

It is insisted, however, that it was the duty of the conductor to have known where deceased was at the time the second coupling was made, and that the company is liable for the negligence of the conductor in signaling the train ahead when he might have known, by the exer-

cise of ordinary care, that the deceased was engaged in making a coupling of the air hose. It appears, however, from the testimony of the conductor and the other train-men that it was no part of the duty of the deceased as a learner to go between the cars or underneath the cars for the purpose of coupling the air hose, but that, on the contrary, his act in doing so was in violation of repeated admonitions on the part of the conductor not to go between the cars and to refrain from exposing himself to any perilous position. The conductor testifies that he had expressly forbidden the deceased from going between the cars to make the air coupling, or for any other purpose; and that in learning the duties of a brakeman, his principal service was in loading and unloading freight and attending to such other duties as might be assigned to him by the conductor. We find no testimony to the contrary in this record.

The conductor further testified that when the train was detached for the purpose of making the coupling he left deceased standing at the caboose, a point some distance north of where White made the second coupling, and hence, the conductor had no reason to believe or to suspect that the deceased had placed himself in so perilous a position.

It further appears from the record that when these empty coal cars were being coupled together on the side track, all of the trainmen were on the inside of the curve; that is to say, on the west side of the track; and a view of all of them could be readily commanded by the

conductor.   The deceased, however, had taken a position on the east side of the train on the outside of the curve, and at a point where it was impossible for any of the other trainmen to see him, except White, the brakeman, who was making the second coupling.   It has been stated that White in his testimony denies that he saw deceased, or had any knowledge of his presence in and about the coupling of the air hose.

It is insisted, however, on behalf of the plaintiff below, that there is evidence in the record that the admonitions of the conductor to the deceased against undertaking these couplings only applied when he was unassisted and in the absence of the other trainmen.  But there is no testimony in the record that the admonitions of the conductor were so qualified.   It is true the engineer testified that he warned the deceased never to go in and couple the air hose without first notifying him, and never to go in on the right side of the train and go out on the left, but to go in and out on the same side, in order that the engineer, to use his language, "might keep track of him."

It further appears that when deceased came to work, he was warned by nearly every member of the crew not to try to couple cars, or air hose; that it was dangerous and that he was not expected to do it; but was to look on, and see the others do it.   These facts are proved by Hayes, Thompson, and Ezell, members of the train crew who were introduced as witnesses on behalf of the plaintiff, and also by the brakeman, White, whose deposition

had been taken by the plaintiff, but was read in evidence by the defendant company.

It further appears from the uncontradicted proof that none of the crew saw the deceased cross over to the east side of the side track, and no one of them knew that he had gone in there to couple the air hose, or that he was in a position of danger until the accident happened.

Defendant in error, however, relies upon the fact that White, the brakeman, testified that the conductor first gave him (White) the signal to move forward, which signal was immediately followed by the signal of him, the said White. Counsel then argue that it was the grossest negligence on the part of Schubert, the conductor of the train, to signal the forward movement of the train when he could see, and was bound to know that the coupling was only half finished; that the conductor saw that White simply moved the knuckle, and this was notice to him that the coupling of the air hose was being performed by another. It is then said, the only person there who could have been engaged in that work was deceased, for the reason that Ezell was two hundred feet to the south, Webster was on top of the train right by the engine, the engineer and fireman on the engine, thus accounting for every man in that crew except the deceased.

Counsel argues that with all these facts staring Schubert in the face, he carelessly and negligently asserted his power as vice principal of that train by ordering it

to move forward when the coupling was only half fin-
ished.

On the subject of the signals, and whether the first
signal for the movement of the train was given by Schu-
bert, the conductor, or by White, the brakeman, the lat-
ter testified that after he made the coupling, he gave
them the signal that he had made it all right, to go
ahead; and Schubert also signaled them ahead (refer-
ring, of course, to the fireman and engineer).

The witness White was afterwards asked:

"Don't you know the conductor gave his signal at the
same time you did for the train to go forward? Haven't
you stated that awhile ago? A. As soon as he gave me
the signal, I gave the signal.

"Q. Wasn't your signals almost together? A. Of
course he was not going to give one until he knew what
I had done back there."

It stands to reason that the brakeman must give the
first signal to the conductor to advise him that
a coupling has been made before the latter
would order a forward movement of the train;
and we think the effect of the testimony on this subject
is that White, the brakeman, after making his coupling,
gave a signal to the conductor that it was made, and,
thereupon, the conductor signaled the train forward.
There is testimony in the record tending to show that the
engineer would have moved the train forward on the
signal of White, the brakeman, that he had completed
the coupling, and that the train was ready for movement,

but however that may be, it is shown on this record that the conductor signaled the train forward after receiving the signal of White that the coupling had been completed.

The deceased was found near the north end of the car next to the last. This point would be opposite the front trucks of the car that White had coupled. Ezell testified that he was hurt north of where White coupled; and Webster, that he was hurt south of Schubert's and north of White's coupling. Yet counsel for the plaintiff below argue that Schubert, the conductor, knew that deceased was assisting White in making his coupling, and did not take ordinary care to ascertain that he had gotten out from between the cars before he signaled the train to move. It is impossible for us to believe that the brakeman, White, or the conductor, Schubert, would have signaled a movement of his train if they had known or had cause to believe that deceased was making this coupling. It is incredible that any of these trainmen would have been guilty of so wanton and cruel an act, and as we have already stated, there is no evidence whatever in this record tending to fix any knowledge or negligent want of knowledge on the conductor for whose act the company would be responsible.

But, if we grant all that is claimed by counsel for plaintiff on the subject of the conductor's knowledge or negligent ignorance of the fact that the deceased had gone under the car to make the coupling, the conductor was warranted in acting on the signal of White that the

coupling had been completed.  The conductor in his position could not see deceased under the train, and must, of course, act upon the signal of his brakeman, and if the latter signaled the conductor that the coupling had been made, when in fact it had not been accomplished and deceased was still under the train, the death of the deceased must be ascribed proximately to the negligence of the brakeman — a fellow servant — in giving a premature signal, and not to the signal of the conductor, who was warranted in acting upon the signal of his brakeman.

We have carefully examined the record, and find no evidence whatever to sustain the verdict of the jury and the judgment of the court.

The second assignment of error is based upon the following instruction given by the trial judge to the jury, viz.: "The defendants owe  a duty to one who is taken into its service as a learner of the duties of brakeman as follows:  First, to adopt and promulgate reasonable rules and regulations for inducting Vincent as a learner and cub into its service; in the next place, the duty to select and appoint competent instructors to instruct him as to the duties and dangers of the service of brakeman; in the next place, to put him under the control and charge of the instructors, to watch over and protect him from the dangers of the situation which he (Vincent) could not and did not appreciate; also to teach him his duties and warn him of the dangers of braking and coup-

ling and uncoupling and adjusting the hose of the air brake and its attachments."

The first criticism upon this charge is that a railroad corporation owes no duty to learners to adopt and promulgate reasonable rules and regulations for inducting them into its service. The general rule is that it is the duty of any person or corporation engaged in a complex business to establish and enforce definite regulations for the protection of its employees, and a failure to adopt such rules, as well as laxity in their enforcement, is recognized as negligence. *Railroad* v. *Reagan,* 96 Tenn., 139, 33 S. W., 1050.

But in the present case the trial judge instructed the jury that it was the duty of a railroad company to adopt and promulgate reasonable rules and regulations for inducting a beginner or learner into its service. The true rule prescribing the duty of a railroad to a youthful and inexperienced employee was thus announced in *Whitelaw* v. *Railroad,* 16 Lea, 397, 1 S. W., 37, as follows: "It is the duty of the master to give such warning, advice and instruction to a youthful and inexperienced employee as will enable him by the exercise of reasonable care to perform the duties of his employment with safety to himself; or in other words, to put him in the same condition with reference to the dangers of the employment as would be an experienced servant."

The uncontradicted proof upon this record is that when the deceased was received into the service of the defendant company, he was placed in charge of the con-

Railroad v. Vincent.

ductor, Schubert, who fully warned him, advised him, and instructed him as to the duties and perils of the occupation. He was not only warned and advised by the conductor but by the engineer and every member of the train crew. He was especially admonished and instructed not to attempt to couple cars, or the air hose. The deceased was not an infant but a young man over twenty years of age, unusually bright, active, and intelligent, and with some measure of experience in the railroad service derived from his employment as caller in the terminal yards at Nashville for a period of twelve months. In our opinion, the undisputed proof is that the company fully complied with the rule enjoined in *Whitelaw* v. *Railroad,* supra; but it will be observed that the circuit judge, in his instructions to the jury, superadded a duty which, in our opinion, is not recognized by the authorities in that the company was onerated with the duty of adopting and promulgating rules and regulations for inducting learners or beginners into its service. It is not shown that such a practice is usual or customary among other well-regulated companies. We think the jury were authorized to infer from the instructions of the trial judge that it was part of the duty of the defendant company to adopt a code of printed rules and regulations, especially designed for inducting learners into the service.

While the rule is recognized in *Railroad* v. *Reagan.* supra, that it is the duty of a railroad company not only

116 Tenn.—23

Railroad v. Vincent.

to promulgate a code of rules for the government of its employees but to enforce their obedience, this is because it is everywhere recognized as the duty of a corporation engaged in a complex business of great magnitude; but while this is true, we know of no rule of law that absolutely requires the company to adopt and promulgate a code of rules for inducting beginners or learners into its service. We, therefore, are of opinion that the instruction of the circuit court judge on this subject was erroneous. For the reasons stated, the judgment is reversed, and the cause remanded.